341 So.2d 340 (1976)
STATE of Louisiana, Appellee,
v.
Oliver FLETCHER, Appellant.
No. 57988.
Supreme Court of Louisiana.
December 13, 1976.
*342 C. Alan Lasseigne, Thibodaux, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., Walter K. Naquin, Jr., Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Fletcher was convicted of aggravated rape, La.R.S. 14:42, and sentenced to death. His appeal raises 23 assignments of error.
In addition to attacking the unconstitutionality of the death penalty and of the statute under which it was imposed, the chief defenses to the merit urged in the *343 trial court (and reiterated here) involve: the alleged insanity of the defendant at the time of the trial; the alleged failure of the state to prove that the victim was "prevented from resisting the act [rape] by threats of great and immediate bodily harm", La.R.S. 14:42(2) [1]; and the defendant's alleged mistake of fact, La.R.S. 14:16, whereby he concluded that the victim consented to sexual intercourse.
Context Facts
The victim of the rape was at home with her three year old son. She was six months pregnant with her second child. Her husband had just been transferred out of town.
According to her testimony, the defendant Fletcher appeared at her bed in the early hours of the morning, while it was still dark. She commenced screaming, and her son beside her was crying. Fletcher put his hand over her mouth and with the other arm, held both down on the bed. She threw a glass at him and tried to hit him, and her boy hit him and tried to bite him.
Fletcher threatened to punch this pregnant woman in the stomach. Because she was afraid for her unborn child and of harm to her and to her boy, she stated, she finally submitted to his demand for sexual intercourse. Immediately after he left the house, she drove to her babysitter's home five minutes away and, hysterical and crying, told her of the incident. The ladies then immediately called the police.
Assignments of Error Raising Issues of Factual Defense
From the state's evidence thus summarized, the trial jury could conclude beyond a reasonable doubt (a) that the defendant's threats of great bodily harm prevented the victim's further resistance, and (b) that the defendant was not justified by any "reasonable ignorance of fact or mistake of fact", La.R.S. 14:16, to conclude that the victim consented to the act. We therefore find no merit to Assignments 18 (motion for directed verdict of acquittal) and 23 (motion for a new trial), which urge that no evidence at all disputes factual contentions of the defendant to the contrary.
Assignments Relating to Insanity Defenses
Likewise, with regard to the defense of insanity at the time of the offense, La.R.S. 14:14, there was substantial medical evidence that the accused, although mentally retarded (borderline; IQ 72), was legally sane in the sense that he was capable "of distinguishing between right and wrong with reference to the conduct in question", La.R.S. 14:14. See State v. Berry, 324 So.2d 822 (La.1975). Accordingly, we find no merit to Assignment 21, which contends that a new trial should have been ordered because of the lack of an evidentiary basis for the jury finding of present sanity.
Similarly, because of the substantial medical evidence to the contrary reasonably accepted by the trial court as preponderating, we find no merit to the defendant's contention that the trial court erred in finding no lack of mental capacity in him to assist in his defense. La.C.Cr.P. art. 641. See State v. Morris, 340 So.2d 195 (La.1976). This contention is urged in an assignment based on this ground, taken to the finding of a sanity hearing, to the denials of new trial and arrest of judgment, and to the sentencing. Assignment 1.
Assignment 21 also urges that the accused should have the right to appellate review of the jury's factual finding of sanity at the time of the offense. Assignment 11 raises the issue that Louisiana's statutory scheme for the trial of the defense of not guilty by reason of insanity deprives him of due process and equal protection in violation of constitutional right; one reason advanced is that there is no statutory scheme to ascertain, separately from the determination of guilt, the number of jurors who specifically voted against the accused's plea of not guilty by reason of insanity.
*344 Without summarizing the subtle arguments advanced by the accused's counsel, it is sufficient to state that we find no constitutional requirement for appellate review of the defense of insanity at the time of the crime, nor for separately polling the jury as to this factual defense. The unanimous general verdict of the jury, properly instructed as to factual defense of insanity, constitutes a factual rejection of this defense as well as of the others urged.
The appellate jurisdiction of this court to review this factual issue is limited to issues of law by our state constitution, La.Const., Art. 5, Section 5(B). We are cited to no persuasive authority that this historic limitation of review, common to that of many American jurisdictions, offends constitutional guarantees of due process and equal protection.
Assignments Relating to Defendant's Confession and Inculpatory Statements
The defendant moved to suppress his confession on the ground it was not voluntarily made.
The evidence on the motion, taken outside the presence of the jury, supports the trial court's finding that, beyond a reasonable doubt, it was freely and voluntarily made, without coercion or inducement. We do not find error in the trial court's finding credible the police officers' testimony to this effect and in its evaluation of the accused's testimony to the contrary as not credible. The evidence also supports a reasonable basis for the trial court's finding that, under accepted legal standards, the accused had the mental capacity fully to understand his act and voluntarily to give the confession.
We therefore find no merit in Assignment 4.
Before the confession was given, the defendant had first informed the police officers that the victim had voluntarily admitted him to her home and had consented to sexual relations. Early in the trial, the state informed the defendant of its intention to introduce this initial exculpatory version of the incident into evidence. As we read the transcript, the defendant's counsel at that time did not object and in fact acceded to the state's plan to introduce this testimony as being favorable to the accused. See Vol. I, 89-98, especially 89-93. No objection was made when evidence to this effect was subsequently introduced before the jury.
Assignment 5 is based upon the post-trial contention that the oral pre-confession version of the incident was improperly introduced, since beyond the scope of the state's pre-trial notice of its intent to introduce the written confession. La.C.Cr.P. art. 768. This closely related preliminary oral statement, taken immediately preceding and in connection with the written confession, can probably be regarded as fairly within the scope of the state's notice. In any event, however, the accused's failure to object to it before its introduction waives a subsequent claim of error in this regard. La.C.Cr.P. art. 841.
Motion to Quash the Indictment
Assignment 6 relates to the denial of a motion to quash the indictment. The motion is based on the alleged arbitrary and unlawful exclusion from the general venire of all persons who had been summoned for grand or petit jury duty in the preceding two years. It is contended that only those jurors who actually served as civil or criminal jurors should have been excluded from the succeeding venires.
The evidence reveals that the grand and petit jury venires are chosen in the parish of the trial as follows:
In a large hopper are placed a great number of individual names of randomly selected individuals representing a fair cross-section of the population. From this large hopper, a general venire of 1,000 names is randomly selected. La.C.Cr.P. art. 408. It is periodically supplemented to that number, La.C.Cr.P. art. 410, to replace the previously drawn grand jury venire of fifty persons, La.C.Cr.P. art. 411, and the previously drawn petit jury venires (in this case, *345 six venires of 75 persons each), La.C.Cr.P. art. 416.
Subsequently, a grand jury is randomly selected from the grand jury venire. La.C.Cr.P. art. 413. Also, prospective petit jurors are indiscriminately drawn from petit jury venires, La.C.Cr.P. art. 784, when the venires are called to serve during criminal jury-trial weeks, and tendered for examination, challenge, or acceptance. La.C.Cr.P. arts. 786-90, 795-800.
No arguable issue is shown that the procedures thus far described did not result in a jury chosen at random from a fair crosssection of the population.
The testimony further shows, however, that once prospective jurors were called to serve on either a grand or petit jury venire, they were not placed back into the hopper for two years (after which time they were again returned to the hopper). They were excluded from further jury service for two years, whether or not they were actually chosen to serve on the grand or petit juries selected from their respective venires.
The defendant claims that such exclusion from service during that period was arbitrary and not in compliance with law. He bases this contention upon La.C.Cr.P. art. 410(1), which directs jury commissioners to exclude those persons who "have served as civil or criminal jurors", as well as upon Rule XXV, Section 3(f) (1974) of this court (now Rule XXV, Section 4 (1976)[2]), which likewise provides for exclusion of those "who have served as grand or petit jurors. . . during a period of two years immediately preceding their selection for jury service."
The defendant presents a close issue. The language of the statute and the rule are susceptible to the interpretation urged by the defendant: that only those who actually tually "served as grand or petit jurors" during the preceding two years should be excluded from the choosing of the general venire.
Nevertheless, the language is also subject to the less-obvious interpretation that a person called as a "prospective" juror, or subject to service as such during the existence of his venire, can also be regarded as having "served", whether or not he was actually chosen for a particular grand or petit jury.
The statutory language, for instance, talks of "prospective jurors" of the venires. See La.C.Cr.P. arts. 786-788. Further, the intent of the exclusion is to excuse from further jury service for a period of two years those caused the sacrifice of public duty by being subject to the disruption of their personal lives by the obligation to serve on juries. This intent, we believe, is better served by the interpretation that, for purposes of the exclusion, those called to serve as prospective jurors by inclusion on venires from which grand and petit juries are chosen have "served as [prospective] grand or petit jurors", whether or not actually accepted to serve on a grand or petit jury selected from their respective venires.
We therefore reject the defendant's contention that the general venire was improperly selected.
Nor do we find merit in the contention that the present general venire included an appreciably greater number of females because of the exclusion. This argument is based on the circumstance that, until January 1975, Louisiana women were not ordinarily subject to jury service; consequently, at the time the present venires were drawn in 1975, the prior venires for the preceding two years (some one to two thousand names) were predominantly male.
*346 However, the record indicates that the one-to-two thousand names temporarily withheld from the large hopper would amount to a very small percentage of the large number of names in the large hopper. Thus, the impact of this temporary imbalance of males excluded because of prior jury service would be slight on the overall composition of the supplements to the general venires periodically chosenand the impact even slighter on the grand and petit juries chosen from these venires for the indictment and trial of the present defendant.
Under these circumstances, where it is conceded there is no fraud or deliberate evasion of constitutional requirements that a fair cross-section of the population be available for jury service, we will not set aside the general venire, the grand jury venire, nor the petit jury venire chosen in accordance with law and as a result of the process described. See La.C.Cr.P. art. 419. See State v. Reid, 340 So.2d 551 (La.1976) (1976).
Assignments Relating to Selection of the Petit Jury
We do not find reversible merit in the several assignments of error made by the defendant based on rulings made during the selection of the petit jury:
By assignment 7, the defendant claims that the accused, a black man charged with the rape of a white woman, was denied a cross-section jury by the state's action in peremptorily challenging two black prospective jurors and by the court's action in excusing, La.C.Cr.P. art. 783, (for reason shown adequate) another black prospective juror. Absent a showing of systematic exclusion of persons of a given race from jury service, the prosecutor's discretionary exercise of the peremptory challenges allowed him by law, La.C.Cr.P. art. 799, does not present an issue for judicial review as to abuse. State v. Gray, 285 So.2d 199 (La.1973). No such showing is here made.
Since the defendant did not exhaust his peremptory challenges, the defendant cannot complain of the trial court's alleged error in denying his challenges for cause of four jurors. Assignments 8 and 12.
As to Assignment 13, the law does not require the sequestration of prospective jurors during voir dire examination; no abuse of discretion is shown by the trial court's denial of the defendant's motion for such sequestration. State v. Robinson, 302 So.2d 270 (La.1974).
By Assignment 15, the defendant contends that his voir dire examination was unreasonably curtailed as to questions designed to test a juror's emotional reaction to an emotional witness, III Tr. 93, as to questions as to the issue of the death penalty in a rape case, V Tr. 534-37, and on the issue of expert medical testimony and lay testimony, IV Tr. 394-96. We find no error in the trial court's action in holding improper the three comments or questions cited to us in brief. The voir dire examination as a whole indicates that the trial court allowed great latitude and sufficient opportunity for defense counsel to explore the attitudes and inclinations of the prospective jurors with regard to the issues noted.
(Indeed, over the entire four days of voir dire examination and the next four days of the trial itself, the trial court exhibited great patience and fairness and allowed large latitude to defense counsel in his examination of witnesses and prospective jurors. These same qualities were also exhibited by the court's evidentiary rulings permitting the defendant to introduce evidence over state objection or in sustaining defense objections to state actions.)
Assignments Relating to Trial Rulings
The defendant contends that several errors were committed during the process of the trial. None of the assignments so urged present reversible merit, for the following reasons:
Assignment 2: The defendant contends that he was denied compulsory process: The director of a state school for the *347 mentally retarded did not respond to a subpoena requesting him to bring records of the accused's detention there for approximately ten years.
The record reveals: While the defendant desired citation of the director for contempt, the purpose was only to secure such records. Eventually such records were produced and, by stipulation, read to the jury. The defendant did not object to this method of authenticating the records, nor complain of a denial of compulsory process before submitting the case to the jury. See Volume X, Tr. 616-24, 662-69, 676-82.
We fail to see any prejudice sustained or urged before the jury verdict as resulting from the director's failure to respond to the subpoena.
Assignment 3: The defendant contends that the trial court abused its discretion by failing to recognize a defense witness as an expert in the field of "psychology guidance." The trial court recognized the witness's field of expertise as the field of "guidance counselling", based upon his training and experience, Tr. 554, and further noted its willingness to let the witness be examined in the field of "psychology guidance", as described by the witness, insofar as applicable to the accused, Tr. 544. We find no abuse of discretion nor prejudice. (We further find absolutely no basis for the mistrial sought by the defendant on the basis of the court's ruling. Assignment 20.)
Assignment 16: The defense counsel objected to the long hours of session during the voir dire examination, see Volume III, 202-06, 267-73, and now contends that the accused was denied effective representation because of the long hours of trial. The isolated complaints do not indicate merit, nor, aside from the lack of reiterated objection during the trial, does the record reflect any abuse of the trial court's great discretion in determining the hours of trial, nor any prejudice. See also trial court's per curiam.
Assignment 17: The defendant complains of the trial court's failure to give certain special charges. The trial court correctly found that such charges were either contrary to law, incomplete statements of the law, or included in the general charge.
Assignment 19: Whatever slight objection there might have been to the hypothetical question objected to, it was cured by the trial court's admonition. The mistrial sought was properly denied. La.C.Cr.P. art. 775.
Assignments Relating to Constitutionality
Finally, the defendant contends that the rape statute, La.R.S. 14:42, is unconstitutional, Assignments 9, 14, and that the death penalty for rape is unconstitutional, Assignment 10, or unconstitutional as applied as to him, Assignment 22.
With regard to the validity of the conviction for rape under La.R.S. 14:42 (despite the invalidity of the death penalty), we have recently affirmed convictions despite the constitutional invalidity of the penalty. See decisions of October 14, 1976: State v. Smith, La., 340 So.2d 247; State v. Watkins, La., 340 So.2d 235; State v. Sledge, La., 340 So.2d 205; State v. Morris, La., 340 So.2d 195; State v. Lee, La., 340 So.2d 180; and State v. Craig, La., 340 So.2d 191.
We thus have rejected the defendant's contention that, without a constitutionally valid penalty provided by statute, the statutory crime itself is also invalid. See also Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), invalidating the penalty but not the conviction for aggravated rape in State v. Selman, 300 So.2d 467 (1974).
Assignment 9 is essentially based on the erroneous contention that La.R.S. 14:42(2), under which the defendant was convicted, is somehow repealed or made vague by post-trial enactment by the legislature of La.R.S. 14:43.1 (Act 333 of 1975).
The 1975 statute created the crime of "forcible rape": i.e., sexual intercourse "without the lawful consent of the female where she is prevented from resisting the *348 act by force or threats of violence wherein the victim reasonably believes her resistance to be useless".
This statute merely created a lesser degree of the crime, permitting a responsive verdict, La.C.Cr.P. art. 814, subd. A(8) (as amended in 1975), to the charge of aggravated rape, La.R.S. 14:42.[3] It does not, as defendant contends, repeal or make ambiguous the more serious offense of aggravated rape defined by Subsection (2) of the latter statutepunishing sexual intercourse without the lawful consent of the female since committed "Where [she] is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution."
By Assignment 14, the defendant contends the statute punishing rape by a male of a female, La.R.S. 14:41, 42, unconstitutionally discriminates against a male because it does not similarly punish the rape of a male by a female. Pretermitting the physiological difficulty of the latter feat, we do not find this legislative classification of males as punishable by the crime unreasonable, nor an invidious discrimination against males so as to deny them the equal protection of the laws: female rapes of males do not represent a social problem, although male rapes of females do. See State v. Devall, 302 So.2d 909 (La.1974).
Nevertheless, the death penalty itself has been invalidated by the United States Supreme Court. Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed. 2d 974 (1976); Selman v. State of Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). For the reasons stated in our above-cited decisions of October 14, 1976, therefore, the death penalty must be set aside, and the case remanded to the district court for imposition of the most serious penalty imposable for a lesser included offense, i.e., (at the time of this offense of October 25, 1974) to twenty years, the maximum penalty for simple rape, La.R.S. 14:43.

Decree
For the reasons assigned, the defendant's conviction is affirmed, but his sentence is set aside and his case is remanded to the district court for resentencing consistent with the views herein expressed to imprisonment at hard labor for a term of twenty years.
CONVICTION AFFIRMED, BUT REMANDED FOR RESENTENCING.
SUMMERS, J., concurs.
NOTES
[1] The defendant also contends that La.R.S. 14:42(2) was repealed by La.R.S. 14.43.1 (1975). See discussion below under Assignments Relating to Constitutionality, in the last section of this opinion.
[2] This 1976 revision provides:

"The jury commission shall not include in, and shall delete from, the general venire the names of those persons who have served as grand or petit jurors in criminal cases or as trial jurors in civil cases during a period of two years immediately preceding their selection for jury service. However, if the name of such a person is included in a general venire, that person may claim an exemption from jury service or may waive the exemption."
The 1976 revision clarified that this exclusion from jury service, partly based upon statute, is not a personal exemption which must be claimed by the person entitled to it.
[3] La.R.S. 14:42 (as amended by Acts, 1975) provides:

"Aggravated rape is a rape, heterosexual or homosexual, committed where the sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
"(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force;
"(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution;
"(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
"Whoever commits the crime of aggravated rape shall be punished by death."