448 So.2d 246 (1984)
STATE of Louisiana
v.
Alvin NORMAN.
Nos. 83 KA 1107, 83 KA 1108.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
Writ Granted in Part July 17, 1984.
*247 Ossie B. Brown, Dist. Atty. by Ralph Roy, Brenda Creswell, Asst. Dist. Attys., Baton Rouge, for plaintiff-appellee.
M. Michele Fournet, Appellate Counsel, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
The defendant, Alvin Norman, was charged by grand jury indictment with forcible rape in violation of La.R.S. 14:42.1. He pled not guilty and, after a trial by jury, was found guilty as charged. The state filed a bill of information charging him as a second felony offender under the Louisiana Habitual Offender Law (La.R.S. 15:529.1[A][1]) alleging a prior conviction for armed robbery. The defendant pled guilty to the habitual offender allegation. The trial judge sentenced the defendant to serve thirty years at hard labor in the custody of the Louisiana Department of Corrections and ordered him to pay cost of $252.40. This appeal followed.

SUFFICIENCY OF EVIDENCE
The defendant contends that the jury verdict of guilty is based on insufficient evidence to convict.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts[1] in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983); cf. State v. Captville, 448 So.2d 676 (La.1984).
The victim testified that she lived in a small apartment located behind a building which housed a grocery store and washateria located in East Baton Rouge Parish. The victim worked as a janitor at the washateria. On January 30, 1982, she went to bed at about midnight. At 2:00 a.m., she heard a knock on her apartment door. She asked who was there and a voice replied "Pig", the nickname of a friend who lived across the street from the washateria. The person outside the door asked to use her phone, but she directed him to use the phone in the grocery store in the same building and went back to sleep.
After an unspecified time interval, the victim was again awakened by knocks on her door. She again asked who was there, and the person at the door replied "Pig" and stated he wanted to use the phone. She opened the door and was pushed back into her room and knocked onto her bed. She reached for a pistol that she kept under her pillow, but the intruder knocked it out of her hand and threw it out of her reach. She got up again but was knocked back onto the bed. The intruder then had sexual intercourse with her. After this, the victim went into her bathroom, but the intruder brought her back out, pushed her onto the bed and had sexual intercourse with her again.
During the course of this incident, the intruder beat the victim with his fist in her chest. This caused the victim great concern because she had heart trouble. The intruder told her not to hit him or holler or he would kill her. The intruder smelled of alcohol.
After this ordeal was over, the intruder made the victim lie on her stomach on the *248 bed and he tied her hands behind her back. He then told her to call the police or he would come back and she would be sorry. The victim freed herself but remained sitting in her room until 7:00 a.m. when she called her boyfriend. The boyfriend came over, she told him what happened and he advised her to call the police, which she did. The police subsequently arrived and investigated the incident. The victim was advised not to take a bath but did about an hour later contending that she did not want the intruder's scent on her. The police asked her to go to the hospital for an examination, but she declined.
The victim subsequently identified the defendant, Alvin Norman, from a photographic lineup presented to her by the police. She indicated that, although she never talked to him, she recognized the defendant as a person known by the nickname of "Kingfish" and that she knew the defendant's sister, Carolyn. During the incident, the defendant talked about his sister and brother. The victim also made an in-court identification of the defendant as her assailant.
Detective Sergeant Errol Voinche of the Baton Rouge City Police Department testified that he brought a photographic lineup to the victim and she identified the defendant.
The defendant presented the testimony of Gary Nettles (his brother) and Willie Mae Norman Ray (his mother). Gary Nettles testified that he lived at his mother's home, located two streets away from the apartment of the victim, with the defendant and some of his brothers and sisters. He came home at 1:00 a.m. on January 30, 1982, and observed the defendant sleeping in his bed. He watched television until 3:00 a.m. and the defendant never left the house. Prior to 1:00 a.m., he was at a party but could not recall where the party was. Willie Mae Norman Ray testified that she woke up at 1:45 a.m. on January 30, 1982, checked the doors of the house to see if they were locked and observed the defendant sleeping in his room. She also saw two of her other children, Gary Wayne and Lisa Gail, watching television. She heard about the incident on the morning of January 30, 1982. The defendant told her that he did not do it.
The state then called in rebuttal Benjamin Nettles (defendant's brother) and James L. "Pig" Williams. Benjamin Nettles testified that on the night of the incident he was playing cards with the defendant and "Pig" Williams at Williams' trailer across the street from where the victim lived. The trio played until about 1:30 a.m. when the game broke up. The three were drinking Budweiser beer. Benjamin Nettles was living with "Pig" at that time and slept in "Pig's" trailer that night. After the game broke up, he left and walked to a nearby bar. He went back to "Pig's" trailer at about 2:30 a.m. He then testified that he stopped at his mother's house at 1:45 a.m. after going to the bar. He saw his brother, Gary Nettles, watching TV. He walked through the house and saw the defendant sleeping in his bed. James L. "Pig" Williams testified that he had known the defendant for ten or twelve years and that the defendant's sister, Caroline,[2] and brother, Benjamin, lived with him. Williams also knew the victim. He heard about the incident on the morning of January 30, 1982, and talked to the police at the washateria. He testified that he was playing cards that night with the defendant and Benjamin Nettles and a fourth person whose name he could not remember. The game broke up about 1:00 or 1:15 a.m. The parties to the game were drinking beer.
The jury's verdict indicates that after considering the credibility of the witnesses and weighing the evidence it accepted the testimony of the victim and rejected the alibi evidence presented by the members of the defendant's family. The defendant contends that the testimony of the victim is not credible and should not have *249 been accepted by the jury. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. Korman, 439 So.2d at 1101. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidencethat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. McDowell, 427 So.2d 1346 (La.App. 2nd Cir.1983); Holmes v. Southeastern Fidelity Insurance Company, 422 So.2d 1200 (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983). The testimony of the victim is sufficient to prove the offense charged.
The defendant contends that the evidence is insufficient because there is no medical evidence to confirm a rape. This contention is without merit because the testimony of a victim of a rape is sufficient to establish sexual penetration. State v. Rives, 407 So.2d 1195 (La.1981).
This assignment of error is without merit.

EXCESSIVENESS OF SENTENCE
The defendant contends that the sentence imposed upon him is excessive.
A majority of the Louisiana Supreme Court has held that Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment and that, although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Prados, 404 So.2d 925 (La.1981); State v. Douglas, 389 So.2d 1263 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979).
The authorized sentence for forcible rape is imprisonment at hard labor for not less than two nor more than forty years with at least two years of the sentence imposed without benefit of probation, parole or suspension of sentence. Because the defendant was adjudicated a second felony offender under the Louisiana Habitual Offender Law, the authorized sentence was increased to imprisonment at hard labor for not less than thirteen and one-third years nor more than eighty years. La.R.S. 15:529.1(A)(1). The sentence of thirty years actually imposed is in the lower half of the sentencing range.
At the sentencing hearing, the district court judge observed that the defendant had the following juvenile record:
(1) 1971bicycle theft for which he was counseled and warned;
(2) June 9, 1973burglary and theft for which he was adjudicated a delinquent and placed on a probation which was successfully terminated;
(3) May 15, 1975Two counts of simple battery for which he was counseled and warned; and
(4) January 22, 1976Simple robbery for which he was counseled and warned.
The defendant's adult record was a conviction of armed robbery on October 9, 1978, for which he was sentenced to serve seven years at hard labor and from which he was discharged in the latter part of 1981. The instant offense occurred in January of 1982. Because of the defendant's prior adult and juvenile record and because the sentence actually imposed is in the lower range of the sentencing scale, we cannot say that the district court abused the much discretion accorded him by law. See, for *250 example, State v. Telsee, 425 So.2d 1251 (La.1983) (twenty-five years); State v. Barkley, 412 So.2d 1380 (La.1982) (forty years); State v. Lewis, 412 So.2d 1353 (La. 1982) (twenty-four years).
We note, as did the court in Telsee, 425 So.2d at 1261, that the sentence imposed by the district court is unlawfully lenient because it failed to provide that at least a portion of the defendant's sentence would be without parole, probation or suspension of sentence as required by La.R.S. 14:42.1. Such a provision is applicable to a habitual offender sentence. State v. Bruins, 407 So.2d 685 (La.1981). However, the failure of the trial court to specify that the sentence was not subject to suspension or probation is not significant. The district court judge did not actually suspend the sentence or put the defendant on probation. La.C.Cr.P. art. 893 divests a sentencing judge of his discretion to suspend a second felony offender's sentence and place him on probation. State v. Wimberly, 414 So.2d 666 (La.1982); State v. Reed, 437 So.2d 353 (La.App. 4th Cir.1983).
La.R.S. 14:42.1 contains a mandate that at least two years of such a sentence shall be without parole. Although the defendant ordinarily would not be eligible for parole consideration until he served ten years of his thirty year sentence (La.R.S. 15:574.4), the trial judge in a forcible rape has the discretion of requiring that all of a sentence for forcible rape shall be without benefit of parole. A judgment on this issue by the district court is significant to the defendant and the state in the instant case because with the defendant's prior convictions for forcible rape and armed robbery and his adjudication as a habitual offender, he is not eligible for diminution of sentence for good behavior. La.R.S. 15:571.3. Thus, whatever portion of the sentence the district court determines is not subject to parole must be actually served. Since the portion of the sentence which is to be served without benefit of parole is subject to the discretion of the district judge (and is not mandatory for all of the sentence[3]), we deem it appropriate to recognize this patent sentencing error (La.C.Cr.P. art. 920) and to remand this matter to the trial court for resentencing (in accordance with his discretion) pursuant to the authority of La.C.Cr.P. art. 882. For guidance, see State v. Lathers, 444 So.2d 96 (La.1983).
Accordingly, the sentence imposed by the district court is vacated and this cause is remanded to said court for resentencing in accordance with the views expressed herein.

DECREE
For the foregoing reasons, the defendant's conviction is affirmed, but the sentence is vacated and this cause is remanded to the trial court for resentencing.
CONVICTION AFFIRMED: SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] Under existing Louisiana jurisprudence, the sufficiency of the evidence is a question of fact. State v. Ruple, 426 So.2d 249 (La.App. 1st Cir. 1983) and the cases cited therein at page 255.
[2] The victim stated the sister's name was Carolyn, but James "Pig" Williams testified that her name was Caroline.
[3] See, for example, State v. Johnson, 439 So.2d 636 (La.App. 1st Cir.1983); State v. Thomas, 439 So.2d 629 (La.App. 1st Cir.1983); State v. Jackson, 439 So.2d 622 (La.App. 1st Cir.1983), writ granted, 443 So.2d 1123 (La.1984).