470 So.2d 1001 (1985)
STATE of Louisiana
v.
James Henry KIRKLEY.
No. KA 84 1290.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
Rehearing Denied June 27, 1985.
Stay Order Denied July 22, 1985.
*1003 Ossie Brown, Dist. Atty. by Dennis Weber, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Walton J. Barnes, II, Zachary, for defendant-appellant.
*1004 Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
James Henry Kirkley was charged by grand jury indictment with aggravated rape and aggravated burglary, violations of LSA-R.S. 14:42 and 14:60, respectively. Defendant pled not guilty and, following trial by jury, was convicted as charged on each count. The trial court sentenced defendant to a term of life imprisonment without benefit of probation, parole or suspension of sentence on the aggravated rape conviction and to a concurrent 20 year sentence for the aggravated burglary conviction.[1]
Defendant brings this appeal urging 22 assignments of error:
1. The trial court erred in failing to suppress evidence of a line-up in which defendant was forced to participate without aid of counsel.
2. The trial court erred by allowing in evidence certain physical and tangible objects without a proper foundation thereby prejudicing defendant. These items included, but were not limited to, hair samples and fingerprints.
3. The trial court erred in failing to grant a motion for mistrial when Lt. Duane Jones, a state witness, made an improper and prohibited reference to defendant's past criminal record.
4. The trial court erred in allowing the verdict to stand when no corroborative evidence of the victim's testimony was presented to show the existence of any aggravating circumstances which would result in a finding of guilty of aggravated rape or aggravated burglary.
5. The trial court erred in allowing the state to improperly impeach a defense witness, Robert Matthews, by allowing the state to dwell upon circumstances surrounding the criminal record of that witness. This improperly enlarged the scope of impeachment, thereby creating undue prejudice in the minds of the jurors.
6. The trial court erred by denying defendant's motion for new trial on the ground that the state failed to establish the factual proof constitutionally required for a finding of guilt.
7. The trial court erred in failing to order alternative relief requested in the motion for new trial. That relief consisted of a request for reduction of the verdict to forcible rape and/or simple burglary.
8. The trial court erred in failing to grant a motion for new trial on the grounds of double jeopardy as defendant was convicted of two offenses by the same indictment.
9. The trial court erred in failing to grant defendant's motion in arrest of judgment as the statute charging defendant with aggravated rape was unconstitutionally vague.
10. The trial court erred in failing to grant defendant's motion in arrest of judgment based on double jeopardy.
11. The trial court erred in failing to give special jury instructions requested by the defense.
12. The trial court erred in allowing testimony which attempted to establish foundation for the introduction of physical evidence by use of witnesses who were not properly qualified to collect the samples sought to be introduced.
13. The trial court erred by admitting in evidence a window screen without foundation or without establishing chain of evidence.
14. The trial court erred by admitting certain items of clothing in an in globo *1005 exhibit (state exhibit no. 5) without proper foundation being laid for each of the items of clothing.
15. The trial court erred by allowing introduction of a photograph of a pickup truck which was irrelevant and immaterial.
16. The trial court erred by admitting a photographic line-up which included defendant (state exhibit no. 7). Appropriate foundation for admissibility of said photograph was not established, and defendant was compelled to participate in the line-up without benefit of counsel.
17. The trial court erred by admitting into evidence a written motion to compel the surrender of bodily substances from defendant (state exhibit no. 13). That pleading was inadmissible on its face and created improper influence on the jury.
18. The trial court erred by admitting in evidence vials of defendant's blood (state exhibit nos. 14 and 19) without proper foundation and without the appropriate chain of evidence.
19. The trial court erred by admitting rape kit no. 1-60 (state exhibit no. 16) as an in globo exhibit without properly identifying each item or establishing the chain of evidence.
20. The trial court erred by admitting in evidence head hair, pubic hair and saliva allegedly taken from defendant and a written request for scientific analysis (state exhibit nos. 17 and 18).
21. The trial court erred by allowing unidentified fingerprints (state exhibit no. 25) in evidence. These fingerprints were not established as belonging to or being made by defendant.
22. The trial court erred by admitting palm prints in evidence as the state failed to establish a proper chain of evidence.
Testimony at trial indicated that during the early morning hours of March 13, 1984, a single woman, who resided alone, was awakened by a male intruder clad only in a shirt and socks. While holding a knife at the woman's throat, the intruder forced the woman to disrobe and submit to sexual intercourse. Thereafter the woman was forced to lay in a prone position on her bed while the intruder contemplated her fate aloud. The woman was raped a second time and then directed by her assailant to a bathroom where she was ordered to remain in the shower until he had an opportunity to depart.
Police officers were summoned to the scene shortly after the incident had concluded. The crime scene was secured and the point of entry, a window opening into the victim's dining room, was dusted and photographed for latent fingerprints.
When questioned by police about any noteworthy events prior to the attack, the victim related that a man operating a black and silver truck with red stripes had driven by her home about two weeks prior to the incident and had directed a flirtatious remark at her while she worked in her yard. The victim also noted that she had later seen that same truck parked at a neighbor's house.
As part of his follow-up investigation of the incident, Lt. Duane Jones of the East Baton Rouge Parish Sheriff's office determined the municipal address and the identity of the occupants of the neighboring home where the victim had seen the truck parked. One of the persons listed at that address was defendant, whose fingerprints were on file with law enforcement agencies. By comparing defendant's known fingerprints with latent fingerprints gathered from the crime scene, Louisiana State Police crime laboratory personnel positively identified defendant as the individual whose fingerprints were found at the point of entry of the victim's home.
Based on that information, an arrest warrant was procured and defendant was arrested in St. Francisville, Louisiana, that afternoon. A physical line-up conducted at parish prison later that evening resulted in the victim's positively identifying defendant as the individual who had raped her at knife point.

ASSIGNMENTS OF ERROR NOS. 1 AND 16:
By means of these assignments, defendant contends that the trial court erred by *1006 failing to suppress the results of a physical line-up and by admitting photographic evidence of that line-up at trial, because defendant was forced to participate without aid of counsel.
An accused's Sixth Amendment right to the presence of counsel at a physical line-up is applicable only in cases in which the line-up is conducted at or after initiation of adversary judicial criminal proceedings. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Furthermore, exclusion of a line-up identification is not required under the Louisiana constitutional right to counsel, La. Const. Art. I, § 13, where a line-up is conducted according to fair standards of police procedure and when there is no bad faith effort to circumvent the accused's right to counsel following arrest. See State v. Thomas, 406 So.2d 1325 (La.1981); State v. Williams, 442 So.2d 740 (La.App. 1st Cir.1983).
The instant line-up took place after defendant's arrest, but before institution of formal legal proceedings. Since defendant had not retained counsel when the line-up was conducted, the public defender's office was notified. Robert Matthews, an investigator with the public defender's office, appeared as the representative of that office. Mr. Matthews aided defendant in selecting five other white prisoners to participate in the line-up and noted that defendant picked the number he wore during the line-up procedure.
Defense counsel does not argue the procedure used in the live line-up was suggestive nor that attention of the victim was unduly focused on defendant. Rather, according to the testimony of Mr. Matthews, the victim was hesitant in her selection and did not mark the selection card in his immediate presence.
As evidence of the victim's hesitancy, Mr. Matthews noted that each of the six line-up participants was required to come forward and speak twice. However, both the victim and Sgt. Weber, a sheriff's deputy present during the procedure, testified that each participant was called forward a second time because a jet aircraft had passed overhead preventing the victim from initially hearing each participant.
It is undisputed that after viewing the line-up, the victim was taken to a nearby room. From that point in time, the testimony of Mr. Matthews departs from that of the victim and Sgt. Weber. Mr. Matthews testified that only he was excluded from the room where the victim was taken and that he observed through a glass pane eight or nine individuals, presumably police officers, gathered around the victim. Furthermore, Mr. Matthews noted that he never actually saw the victim designate her selection.
In contrast, Sgt. Wever and the victim each testified that all police officers and Mr. Matthews were asked to leave the room where the victim was to write her selection, if any, because of noise and confusion attendant to the large number of persons present. At that point only the victim and an assistant district attorney remained in the room. The victim testified that she was certain of defendant's identity as her assailant after viewing the line-up, but did not mark her card until taken to the nearby room because she thought she was to sit at a desk to write down any decision and remarks. Further, the victim noted that no one made any suggestions as to her selection.
Thus the record reveals that contrary to defendant's assertion, this case does not involve an effort to seclude defendant from counsel during the conduct of an identification procedure. The showing made in this case was that the line-up was conducted according to fair and standard police procedure. Although Mr. Matthews was excluded from the victim's immediate presence when she physically marked her choice, the state refuted any allegation of coaching or suggestion by officers or the assistant district attorney. The trial judge's determination on the admissibility of an identification is accorded great weight; we will not disturb that determination on appeal as the evidence fails to reveal an abuse of discretion. *1007 See State v. Bickham, 404 So.2d 929 (La.1981).
Additionally, it is abundantly clear from this record that the victim's in court identification of defendant, not challenged by defendant, stems from her independent recollection of defendant from the time of the offense and was not a product of a tainted line-up. See Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). She had ample opportunity to view her assailant who remained in her bedroom for a period in excess of one hour. He wore no mask or disguise, and it had become light outside prior to his leaving. Her description of defendant to the police immediately following the incident was detailed. At trial she was positive that her assailant was defendant.
Accordingly, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 3:
By this assignment, defendant complains that the trial court erred by failing to grant a mistrial when Lt. Duane Jones, a state witness, made a reference to defendant's past criminal record.
The record reveals the following colloquy during direct examination of Lt. Jones whereby the state sought to explain the sequence of events leading to defendant's arrest:
Q. Now, having learned that a person by the name of Kirkley lived at that address, what, if anything, did you then do?
A. I took the last name, Kirkley, and asked our criminal record section to make a criminal records check on the last name, which they did and called me back saying they did have one on a James Kirkley, living at the same address, 5433 Lorranger.
Thereafter, defense counsel promptly requested that the jury be removed from the courtroom and moved for a mistrial, arguing that the reference by Lt. Jones indicated that defendant had a police record. The trial judge denied the motion and admonished the jury that the criminal records bureau contains records from many sources and that accordingly they should not infer from Lt. Jones' statement that defendant had a criminal record.
Louisiana Code of Criminal Procedure article 770 does mandate a mistrial upon motion of defendant when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by defendant as to which evidence is not admissible. A police officer, however, is not a court official within the meaning of La.C.Cr.P. art. 770. State v. Nathan, 444 So.2d 231 (La.App. 1st Cir. 1983), writ denied, 445 So.2d 1232 (La. 1984). The statement in question did not actually refer to another crime despite a possible inference to that effect. The jury was admonished to disregard any impermissible inference, and that was sufficient to assure the defendant a fair trial. La.C. Cr.P. art. 771.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 4, 6, 7, 19, 20, 21 and 22:
By these assignments, defendant contends that evidence adduced at trial was insufficient to support the instant convictions. In particular, defendant urges that testimony of the victim, without corroboration, is insufficient to establish aggravating circumstances. We disagree.
The standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
The victim testified that about 5:30 a.m. on March 13, 1984, she awoke to find a white man on top of her with a knife held to her throat. At knifepoint, she was *1008 forced to submit to sexual intercourse, both with defendant on top of her and from behind. Her testimony was postive about sexual penetration. In addition, vaginal washings obtained shortly after the incident were positive for seminal fluid.
The victim's testimony clearly establishes that she was prevented from resisting the acts because the attacker was armed with a dangerous weapon, to wit, a hunting knife, which the victim described. LSA-R.S. 14:42(3). The evidence also clearly establishes that the victim was prevented from resisting the act by fear of death accompanied by the apparent power of execution, i.e., the perpetrator was armed with a knife which he threatened to use. The victim testified that she was forced to submit because she feared that defendant would kill her.
The record also reveals that the victim had a neighbor call police about 7:30 a.m. shortly after the assailant left her home. Officers who investigated the incident found evidence of forced entry as plastic strips were removed from a window pane on the same line as the locking device of a window which leads to the victim's dining room. Various latent fingerprint lifts of sufficient quality to make a comparison were obtained by crime scene investigators.
Carol Richard, a qualified latent fingerprint analyst with the Louisiana State Police Crime Laboratory, positively identified defendant's left middle fingerprint and defendant's right thumbprint from the exterior of the screen covering the window where entry had occurred. Significantly, defendant's palm print was identified from the interior windowsill immediately below the point of entry. The victim testified that she had not met the man who raped her prior to the incident.
In addition, as detailed above, the victim identified defendant from a physical line-up, during the evening following the incident, and made an in-court identification of defendant as her assailant.[2]
Other serological evidence introduced revealed that the victim and her assailant were both non-secretors. Approximately 20 percent of the population fall into this category.
The vaginal washings from the victim did not contain any spermatozoa. Defendant argues that he could not be the individual who had sexual intercourse with the victim because he produced a semen sample under laboratory conditions which contained numerous motile spermatozoa. However, even defendant's own witness, Dr. Hypolite Landry, testified under cross examination that not all areas of the vaginal vault always contain a uniform distribution of spermatozoa.
Defendant presented testimony of Mark Burns and William Gordon, two of his friends. Mark Burns testified that he met defendant at approximately 10:00 p.m. on March 12, 1984, at a lounge on Old Jefferson Highway. He last saw defendant that night at William Gordon's home at about 3:00 a.m. William Gordon also placed defendant at his apartment during the early morning hours of March 13, 1984, and further testified that when defendant left his apartment it was already light outside. However, these alibi witnesses also placed defendant in the vicinity of the victim's home near the time of the attack.
The jury's verdict indicates that after considering the credibility of the witnesses and weighing the evidence, it accepted the testimony of the victim and the Louisiana State Police Crime Laboratory experts, thereby rejecting the alibi evidence presented by defendant's friends. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Such determination is a question of fact, which the appellate court does not have jurisdiction *1009 to review. State v. Norman, 448 So.2d 246 (La.App. 1st Cir.), reversed in part on other grounds, 452 So.2d 1178 (La.1984). Moreover, the testimony of the victim is sufficient to prove the offense charged. 448 So.2d at 249.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 5:
By means of this assignment defendant contends that the trial court erred by allowing the state to improperly impeach Robert Matthews, a defense witness. In particular defendant urges that the state was allowed, during cross examination, to dwell upon circumstances surrounding the criminal record of that witness.
Pursuant to LSA-R.S. 15:495 evidence of conviction of a crime is admissible for the purpose of impeaching the credibility of a witness. The Louisiana Supreme Court has held that the extent into which this inquiry into past convictions can be permitted is dependent upon each individual case. State v. Chaney, 423 So.2d 1092 (La.1982). Accordingly, the trial judge has great discretion in determining the type of inquiry which will be allowed and his discretion will not be disturbed on appeal absent a showing of abuse. Id.
In response to questioning by the prosecutor, Mr. Matthews admitted that he had been convicted of armed robbery and had served a twelve year sentence at Angola State Prison. Other questioning by the prosecutor related to Mr. Matthews' position as a "jail house lawyer", representing other inmates, while incarcerated. This line of questioning did not impermissibly inquire into details of far-ranging and irrelevant matters as Mr. Matthews had attended the physical line-up as defendant's representative. His experience and knowledge of the criminal justice system were relevant to demonstrate his competence to evaluate the manner in which that line-up had been conductedan issue contested by defendant. This questioning did not go into the specific details about the commission of the offense of armed robbery, but rather attempted to place the witness' expertise in perspective for the jury.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NOS. 8 AND 10:
By these assignments, defendant contends that the trial court erred in denying his motion in arrest of judgment and motion for new trial grounded on the constitutional guarantee against double jeopardy.[3] Defendant urges that aggravated rape is merely an element of aggravated burglary. We disagree.
As noted above, defendant was charged by one grand jury indictment with aggravated burglary, in violation of LSA-R.S. 14:60 and aggravated rape, in violation of LSA-R.S. 14:42. Defendant was tried for both offenses at the same trial.
No person can twice be put in jeopardy for the "same offense." In State v. Knowles, 392 So.2d 651 (La.1980), the Louisiana Supreme Court citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), outlined the following criteria for examining violations of double jeopardy:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ... 392 So.2d at 654.
This rule is constitutionally required by the states, Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and is embodied in La.C.Cr.P. art. 596:

*1010 Double jeopardy exists in a second trial only when the charge in that trial is (1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charges in the second trial; or (2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
Louisiana uses both the "Blockburger test" and the "same evidence test". State v. Steele, 387 So.2d 1175 (La.1980). When a defendant is charged with separate statutory crimes they need not be identical in elements or in actual proof to be the same within the meaning of the constitutional prohibition. State v. Hayes, 412 So.2d 1323 (La.1982).
The Louisiana Supreme Court explains the "same evidence test" in State v. Steele, supra, as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
387 So.2d at 1177.
Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La.1983).
Aggravated burglary is defined in LSA-R.S. 14:60 as follows:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Therefore, in order to prove the crime of aggravated burglary, the state must prove beyond a reasonable doubt that defendant made an unauthorized entry of the victim's home with intent to commit a theft or felony. Additionally, the state must prove beyond a reasonable doubt one of the three aggravating circumstances listed in LSA-R.S. 14:60.
As the state need only prove intent to commit a felony within the victim's home at the moment of unauthorized entry, and not the actual felony itself, it is apparent that the crimes of aggravated burglary and aggravated rape do not contain identical elements. See State v. Anderson, 343 So.2d 135 (La.1977). Moreover, in this instance, evidence necessary to support a finding of guilty of aggravated burglary would not also have supported conviction of aggravated rape. The state was only required to prove one of the three aggravating circumstances listed in LSA-R.S. 14:60 and the record clearly indicates that defendant entered the victim's residence armed with a dangerous weapon. LSA-R.S. 14:60(1).
The two charges are not based on the exact same conduct. Therefore, defendant was not placed twice in jeopardy for the same offense. The trial judge did not err in denying defendant's motions.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 9:
Defendant contends that the trial court erred in denying his motion in arrest of judgment. He argues that the statute under which he was indicted and convicted, LSA-R.S. 14:42, is unconstitutionally vague.
We find no merit to defendant's contention. Defendant urges that the law is ambiguous because there is virtually no difference between the elements of the crime of *1011 forcible rape and the crime of aggravated rape with which he was charged. This argument was previously rejected by the Louisiana Supreme Court in State v. Fletcher, 341 So.2d 340 (La.1976) and State v. Drew, 360 So.2d 500 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).[4]
In State v. Parish, 405 So.2d 1080 (La. 1981), on rehearing, the Louisiana Supreme Court found that although the legal definition of aggravated rape as set forth in LSA-R.S. 14:42(2) and of forcible rape (LSA-R.S. 14:42.1) are virtually identical, a distinction can be made based on the "degree of force employed and the extent to which the victim resists". 405 So.2d at 1087. Additionally, in the instant case, defendant's actions fell within the purview of Subsection (3) of LSA-R.S. 14:42 as the victim was prevented from resisting the rape because her assailant was armed with a dangerous weapon.
For the reasons assigned, we find the trial court did not err in denying defendant's motion in arrest of judgment on this ground.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 11:
By this assignment, defendant contends that the trial court erred in refusing to give three special requested jury charges.
It is the duty of the trial judge to give a requested charge which does not require qualification, limitation or explanation and is not included in the general charge or in another special charge to be given, if it is wholly correct and pertinent to the case. La.C.Cr.P. art. 807; State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir. 1984), writ denied, 460 So.2d 604 (La.1984).
Defendant's requested special charges 1 and 2 were patterned jury instructions outlining the elements of aggravated burglary and forcible rape, respectively. These charges were properly refused as they were already substantially covered by the trial court's general charge.
Special charge 3, also a patterned jury instruction, addressed the elements of aggravated rape. This charge was also properly refused as it did not reflect all pertinent statutory development. It was not wholly correct as not all relevant circumstances under which defendant could be adjudged guilty of aggravated rape were addressed by that charge.
For the foregoing reasons this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 12:
By this assignment, defendant contends that the trial court erred by allowing James Churchman, a state witness, to testify in an attempt to establish a foundation for the introduction of various items of physical evidence. In particular, defendant urges that the state failed to demonstrate that Mr. Churchman possessed the necessary qualifications to collect those samples.
In accordance with court ordered authorization, Mr. Churchman collected saliva, head hair and pubic hair samples from defendant. In response to defendant's argument that it was incumbent upon the state to show that Mr. Churchman was qualified to physically remove that type of evidence, the trial court ruled that no particular expertise was required. We agree.
The record reveals that James Churchman has been employed by the Louisiana State Police Crime Laboratory for ten years. Although assigned primarily to evaluation of physical evidence, such as firearms and fingerprints, his duties do entail some crime scene investigation including collection of serological evidence. The instant sampling required only very basic knowledge of human morphology. Mr. Churchman did not perform any analytical work on the samples collected nor did he *1012 offer any opinion based on analytical findings. Moreover, his collection methods were fully detailed for the jury and defendant was given a full opportunity to cross examine Shirley Phillips, the qualified expert who actually analyzed the samples. This enabled defendant to explore any possible effect Mr. Churchman's methods of collection might have on the reliability of results.
For the foregoing reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO 15:
By this assignment defendant contends that it was error to allow into evidence a photograph of his pickup truck. He urges that the photograph was irrelevant and prejudicial.
The use of photographs as graphic portrayals of oral testimony has long been recognized. A photograph becomes admissible when a witness has testified that it is an accurate representation of what was personally observed by that witness. State v. Moore, 419 So.2d 963 (La.1982). Photographs have been held admissible to establish the connexity between the evidence and the facts of the case at issue. The test of admissibility is whether the probative value of the photograph outweighs any possible prejudice which might result from its display to the jury. 419 So.2d at 967.
In this instance, the photograph of defendant's pickup truck was relevant because it proved useful in corroborating testimony of Lt. Jones as to why suspicion focused on defendant. The photograph cannot be said to be prejudicial in and of itself. The record clearly reveals that Lt. Jones pursued the identity of the driver of the pickup truck, observed by the victim some two weeks prior to the instant offenses, merely as a possible investigative lead. We do not find admission of that photograph confused the jury concerning the issues to be determined.
The trial court has wide discretion in determining the relevancy of evidence, and its discretion will not be overturned absent a clear abuse of discretion. State v. Albert, 430 So.2d 1279 (La.App. 1st Cir. 1983), writ denied, 433 So.2d 711 (La.1983). We find no such abuse and therefore no merit in this assignment of error.

ASSIGNMENTS OF ERROR NOS. 2, 13, 14, 18, 19, 20, 21 and 22:
By these assignments defendant contends that numerous state exhibits were introduced into evidence without laying of a proper foundation or chain of custody.
Demonstrative evidence can be admitted into evidence only after it is shown that, more probable than not, the evidence is connected to the case. That foundation can be laid by establishing a chain of custody of the evidence or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Lucky, 453 So.2d 1234 (La.App. 1st Cir. 1984), writ not considered, 459 So.2d 529.
Moreover, showing of a continuous chain of custody is not essential to the introduction of physical evidence as long as the evidence as a whole establishes that it is more probable than not the same object originally seized. Deficiencies in the chain of custody are also attributable to the weight of the evidence, not its admissibility. State v. Bridgewater, 450 So.2d 1075 (La.App. 1st Cir.1984).
Review of the record convinces us that all disputed items were shown to be more probably than not connected with this case.
Clothing worn by defendant when arrested was introduced into evidence based on identification by Lt. Duane Jones, who was present when defendant was arrested, and testimony of the victim that the shirt and socks were similar to those worn by her assailant.
James Churchman testified that he collected hair and saliva samples from defendant and prepared the written request for their analysis. These were delivered to Shirley Phillips, who testified that she performed the analytical tests on these samples. Both Mr. Churchman and Ms. Phillips *1013 are employees of the Louisiana State Police Crime Laboratory.
Ms. Phillips also testified that she received the rape kit in globo and performed the serological testing of its contents. This kit was prepared by Dr. Randall Brown, who identified it in globo. The kit was delivered to the Louisiana State Police Crime Laboratory by Lt. Duane Jones, who was present at the hospital when the kit was prepared.
Dr. Carl E. Blunck, III, a deputy coroner, testified that he drew a blood sample from defendant in the presence of Lt. Duane Jones. The envelope and vial, which he visually recognized, were delivered to Lt. Jones, who testified that he thereafter delivered the sample directly to Shirley Phillips, who presented the serological results. Both Dr. Blunck and Lt. Jones also witnessed the authorization to draw a blood sample signed by defendant.
Crime scene investigation was conducted by a team which included Lt. Paul Maranto, Jr. and Sgt. Richard Crochet. Sgt. Crochet delivered latent fingerprints lifted from the scene to the State Police Crime Laboratory, and Carol Richard, who performed latent fingerprint analysis, recognized the envelope and her handwriting. In addition, a window screen recovered from the scene was delivered to the District Attorney's office by Sgt. Crochet a few weeks before trial.
In this context, defendant also urges that evidence from the Louisiana State Police Crime Laboratory should not have been admitted because the state failed to offer certificates of analysis authorized by LSA-R.S. 15:499, 500, and 501. A new basis for objection cannot be raised for the first time on appeal. State v. Fowlkes, 352 So.2d 208 (La.1977). Moreover, these statutes provide for proof of criminal laboratory findings by certificate of the person in charge of that laboratory only as an alternative method and not as an absolute prerequisite.
For the foregoing reasons, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 17:
By this assignment defendant contends that the trial court erred by allowing introduction into evidence of a motion and order which compelled defendant to submit to taking of blood, saliva and hair samples. Defendant argues that the motion was irrelevant and tended to mislead the jury into thinking that a tribunal had already determined defendant's guilt.
We find that the motion was relevant as tending to lay a foundation for introduction of the sampling that it authorized. Moreover, its contents clearly indicate that defendant had only been arrested and charged with the instant offenses, such information was independently within the jury's knowledge.
We find no abuse of discretion and therefore no merit to this assignment of error.
For the above and foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The record is devoid of evidence that the trial court waited the required twenty-four hours after defendant's motion for new trial was denied before imposing sentence. (La.C.Cr.P. art. 873) nor does the record indicate that defendant waived that waiting period. Defendant does not argue or in any way show that he was actually prejudiced by the failure of the trial court to observe the waiting period. Such failure on the part of the trial court is harmless error where defendant does not show actual prejudice. State v. Mason, 447 So.2d 1134 (La.App. 1st Cir.1984).
[2] Defendant makes much of the fact that the fingerprints of another individual were also submitted to the Louisiana State Police Crime Laboratory for comparison with the latent fingerprint lifts. However, this individual's fingerprints did not match. The record further reveals that his name was submitted by one of the investigating officers only because he knew that individual lived in the area of the rape and that he had been previously arrested for sex crimes. Therefore, this information in no way weakened the state's case against defendant.
[3] Procedurally double jeopardy is a basic defense that may be raised at any time. Official Revision Comment to La.C.Cr.P. art. 859 provides that double jeopardy may be urged by motion in arrest of judgment only if not previously urged. In the instant case, that defense was not urged by motion to quash or during trial and was properly urged by motion in arrest of judgment.
[4] Although the applicable rape statutes were amended and reenacted subsequent to the Fletcher decision by Acts 1978, No. 239, § 1, and subsequent legislative acts, this new legislation did not alter the significant phrasing of LSA-R.S. 14:42(2) and 14:43.1 (reenacted as 14:42.1). See also, State v. Sosa, 446 So.2d 429 (La.App. 4th Cir.), writ denied, 450 So.2d 361 (La.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 209, 83 L.Ed.2d 140 (1984).