458 So.2d 937 (1984)
STATE of Louisiana
v.
Walter E. JOHNSON.
No. KA/83/1325.
Court of Appeal of Louisiana, First Circuit.
July 10, 1984.
On Rehearing October 30, 1984.
*939 Ossie Brown, Dist. Atty., Baton Rouge, for plaintiff-appellee.
Johnny Matthews, Baton Rouge, William J. Guste, Jr., Atty. Gen., State of La., New Orleans, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Defendant, Walter E. Johnson, was charged by bill of information with aggravated burglary in violation of La.R.S. 14:60. He waived trial by a jury. Following a bench trial, defendant was found guilty as charged and sentenced to twenty years at hard labor. He now appeals his conviction and sentence, alleging five formal assignments of error and arguing a sixth.
FACTS
On April 2, 1982, Avis Michele Richard (Ms. Richard), a fourteen year old female, was asleep in her bed at her mother's residence. At approximately 3:30 a.m., she was awakened by a man wearing a cloth over the lower part of his face standing over her holding a knife. The man put one hand over her mouth, but when she jumped up, he ran into the next room which was the kitchen. At the same time, Ms. Richard heard her younger brother go to the bathroom and return to his bedroom across the hall. Prior to this time Ms. Richard did not recognize the intruder; however, a light was on in the bathroom across the hall which gave some illumination to the kitchen. When the intruder looked back into Ms. Richard's room a few moments later, Ms. Richard saw that there was no longer any covering on his face and immediately recognized him. When the intruder went further into the kitchen, Ms. Richard ran screaming to her mother's room where she, her brothers and sister and her mother locked the door. The police were called and by the time they arrived the intruder had fled. The police found that the front glass storm door had been shattered and that the window next to the front door had been broken.
Ms. Richard told the police officers who the intruder was, and her brother showed the officer where the intruder lived in the neighborhood. The officers returned to the Richard home with the defendant, and Ms. Richard made a positive identification. A kitchen knife belonging to Ms. Richard's mother was found by police officers outside the Richard residence. Ms. Richard also positively identified the knife as the one the intruder had been holding in his hand when he awakened her. Defendant was arrested, charged, and convicted of aggravated burglary.
On appeal, defendant briefed the following assignments of error:
1. The trial court erred upon [sic] allowing the State to introduce evidence of another crime.
2. The trial court erred in not granting defendant's motion for a new trial.
3. The trial court erred upon [sic] sentencing defendant to an excessive sentence of twenty (20) years, considering the fact that defendant was a first offender.
Defendant has not briefed his two remaining assignments of error. Therefore they are considered abandoned. Rule 2.12-4. Uniform RulesCourts of Appeal, State of Louisiana; State v. Trevathan, 432 So.2d 355 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1141 (La.1983).
ASSIGNMENTS OF ERROR NUMBERS 1 and 2
Defendant's first assignment of error is based on his contention that the trial court erred when it admitted evidence of another crime allegedly committed by defendant. In his second assignment of error, defendant contends that the trial court committed reversible error when it denied defendant's motion for new trial alleging prejudicial error to defendant when the trial court ruled that evidence of another crime was admissible at trial.
On the day of trial, May 18, 1983, prior to opening arguments, the State filed a written *940 motion for a Prieur hearing.[1] In its motion the State asked to be allowed to introduce evidence that defendant had committed an aggravated rape on October 28, 1982, while he was out on bond on the instant charge under circumstances similar to those present in this aggravated burglary. The State offered to submit such evidence for the purpose of showing that there were certain similarities between the two crimes from which it could be concluded that defendant was the perpetrator in both those incidents. Additionally, the State urged that the fact defendant committed an aggravated rape in the October 28 incident was proof that he intended to do so in this incident, thereby proving his intent to commit a felony upon entering the house, a requisite element of aggravated burglary.
At the close of the State's presentation of evidence on the aggravated burglary charge, the court held a Prieur hearing over the objection of defense counsel.[2] At the hearing, evidence was admitted of an incident wherein a fifteen year old white female was raped (McManus incident). Defendant was charged with that rape and tried by a 12-man jury. That trial ended in mistrial when the jury could not reach a decisionnine voting for acquittal and three for conviction.
The evidence offered at the Prieur hearing consisted of the testimony of five persons who had been involved in the rape trial: the victim, the investigating officers, and the technicians who matched blood samples and conducted the rape examination. The rape victim testified that she could not identify her assailant in any way but stated that he wore a dark ski mask and held a knife to her throat. The investigating officers testified that defendant's fingerprints were found on the window sill by the broken window which was the suspected point of entry. Also, a dark ski mask and knife were found in defendant's room. However, State and defense counsel stipulated that the rape victim could not say that the ski mask and the knife were the ones used by her assailant. The victim had dried blood on her back and face and quite a bit of blood was found in the victim's bedroom. Defendant had only one small cut on the surface joint of one finger when he was arrested. The lab technicians testified that there was a quantity of blood in various places around the victim's bedroom, some Type A which was the victim's type, and some Type O which was the defendant's type. However, blood samples were inconclusive evidence because of the common type, and because the blood found at the point of entry was the victim's type while the blood found on the ski mask was defendant's type. The rape kit technician testified that, although pubic hairs were found on the victim which were not the victim's hairs, neither did those hairs belong to the defendant. Defendant took the stand at the Prieur hearing and testified that during the day he had gone by the rape victim's house to talk to her father, who was not at home. He had noticed the broken window and had touched the area around it to see what had happened. He denied that he had committed the rape.
At the completion of the State's evidence at the Prieur hearing, defense counsel stated that he had been the counsel for defendant at the prior trial for aggravated rape and that the facts were essentially as stated in the testimony. However, he further stated that much of the testimony received at that trial had not been heard at the Prieur hearing. He objected to the introduction of the related crime evidence on the grounds that defendant had never been identified as the rapist in the McManus incident and the McManus jury had declined to convict defendant. Thus, he argued, serious doubt was cast on defendant's connection with the McManus incident when the rape trial ended in a mistrial.
At the close of the Prieur hearing, the trial judge found that the fingerprint evidence *941 was sufficient to establish beyond a reasonable doubt that defendant was, in fact, the intruder in the McManus incident. Thus, the evidence of the McManus crime was used and from it could be inferred the intent required to prove aggravated burglary in the instant trial.[3]
Generally, evidence of other crimes committed by a defendant is inadmissible due to substantial risk of grave prejudice to the defendant. State v. Prieur, 277 So.2d 126 (La.1973). There are, however, a few exceptions to this exclusionary rule, as set out in State v. Kahey, 436 So.2d 475, 487 (La.1983):
Aside from the related offenses admissible as part of the res gestae and convictions admissible for impeachment purposes, Louisiana statutes provide for only three instances where other crimes evidence is `substantially relevant' such as to qualify as an exception to the general rule of exclusion: acts relevant to show intent, knowledge, or system. La. R.S. 15:445, 446.... Admission of another crime committed by the same `system' as the offense charged might also be relevant to show the identity of the defendant as the offender. (Citations omitted).
The case of State v. Moore, 440 So.2d 134 (La.1983), sets forth guidelines for determining when other crimes evidence has "substantial relevancy" that qualifies it for admission as an exception to the exclusionary rule.
First, there must be clear and convincing evidence that the defendant committed the other crimes. Second, the other crimes evidence must be substantially relevant for some other purpose than to show defendant's general criminal character. Third, the other crimes evidence must tend to prove a material fact genuinely at issue. Fourth, the method of commission of both the charged and the uncharged crime must be so distinctly similar that one may logically infer that the same person committed both crimes. Fifth, the probative value of other crimes evidence must outweigh its prejudicial effect. State v. Moore, 440 So.2d at 137.
The serious attack of the other crime evidence in this case is based on the contention that defendant's identity was not proved in the related crime. This contention is based on the fact the jury failed to convict defendant of the related crime. We hold this fact not to be determinative of the identity of the defendant in the related crime for purposes of admissibility of other crime evidence.
According to McCormick's Handbook of the Law of Evidence, Sec. 190, 451-452 (E. Cleary 2nd ed. 1972):
In the first place, it is clear that the other crime, when it is found to be independently relevant and admissible, need not be established beyond a reasonable doubt, either as to its commission or as to defendant's connection therewith, but for the jury to be entitled to consider it there must of course be substantial evidence of these facts, and some courts have used the formula that it must be `clear and convincing.' And it is believed that before the evidence is admitted at all, this factor of the substantial or unconvincing quality of the proof should be weighed in the balance. (footnotes omitted).
Louisiana courts have applied the "clear and convincing" evidence test in determining whether a defendant committed a related crime. State v. Gaines, 340 So.2d 1294 (La.1976). What constitutes clear and convincing evidence has been defined in Succession of Lyons, 452 So.2d 1161, 1165 (La.1984), as follows:
The traditional measure of persuasion in civil cases is a preponderance of the evidence, but there are a limited number of claims and contentions governed by an intermediate standard, usually termed `clear and convincing evidence.'
Generally, this third burden of proof requires more than a `preponderance of the evidence' but less than `beyond a *942 reasonable doubt.' The existence of the disputed fact must be highly probable, that is, much more probable than its non-existence. Louisiana State Bar Association v. Edwins 329 So.2d 437 (La., 1976). This standard is usually employed `where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy grounds.' McCormick on Evidence, Section 340(b), p. 798 (2nd ed. 1972).
To further put this definition in perspective, and as indicated in the above quote, clear and convincing evidence requires more proof than a "preponderance of the evidence." A preponderance of the evidence has been defined as follows:
A preponderance of the evidence means evidence of greater weight or evidence which is more convincing than that offered in opposition to it.
Starks v. Kelly, 435 So.2d 552, 556 (La. App. 1st Cir.1983).
And clear and convincing evidence is less than `beyond a reasonable doubt.' `Beyond a reasonable doubt' has been defined as follows:
A reasonable doubt is not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt, for which you could give good reason.
State v. Taylor, 410 So.2d 224, 225 (La. 1982).
A careful analysis of this record shows that the other crime evidence was not clear and convincing for the following reasons:
1. The victim in the McManus incident could not identify the offender;
2. The victim in the McManus incident could not identify the ski mask worn by the offender or the knife he carried;
3. Although there was a great deal of blood not belonging to the victim in the victim's room and on her person, Johnson only had a small nick on his finger;
4. The blood on the broken glass at the suspected point of entry was blood type A and not that of Johnson;
5. The foreign pubic hair found on the victim's body was not Johnson's.
Accordingly, defendant's conviction and sentence are set aside and this case is remanded for retrial consistent with this opinion.
REVERSED AND REMANDED.
CRAIN, J., dissents and assigns reasons.
CRAIN, Judge, dissenting.
I respectfully dissent from the holding of the majority that the other crime evidence is inadmissible because the evidence presented is not "clear and convincing" as to the defendant's identity in the related crime.
"Clear and convincing" evidence of identity of the defendant in the related crime is the appropriate test. State v. Gaines, 340 So.2d 1294 (La.1976). However, the evidence does not have to clearly convince appellate judges if it clearly convinces the trial judge and that determination is not a clear abuse of discretion. Evidence of similar acts is admissible to show intent. La. R.S. 15:445. If evidence shows intent, it is relevant. La.R.S. 15:441. "Whether evidence is relevant is within the discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of this discretion." State v. Chaney, 423 So.2d 1092, 1100 (La.1982). (Emphasis added). Even where the trial judge must determine that the evidence is sufficient beyond a reasonable doubt, such determination is entitled to great weight and will not be overturned on appellate review unless not supported by the evidence. State v. Smith, 409 So.2d 271 (La. 1982); State v. Davis, 407 So.2d 666 (La. 1981).
The trial judge here did not clearly abuse his discretion in finding the evidence of defendant's identity in the related crime clear and convincing for one crucial reason not mentioned by the majority. The trial judge knew the identity of the defendant in *943 the case being tried. Knowing that this defendant was present in the Richards' home, and the similarity in circumstances between the defendant's presence in the Richards' home and the perpetrator of the McManus incident, it was logical for the trial judge to conclude that it was this defendant who committed the McManus rape. It is then reasonable to infer from the McManus incident that the defendant had the same intent to commit rape when he entered the Richards' home.
A careful analysis of the record results in the conclusion that the trial judge did not clearly abuse his discretion in determining the evidence was clear and convincing of defendant's identity in the McManus incident for the following reasons:
(1) Defendant was present in the Richards' home under circumstances almost identical to those present in the McManus incident.
(2) Both the McManus and Richards' girls were approximately the same age.
(3) The defendant, McManus and Richard lived in the same neighborhood.
(4) Blood matching defendant's type was found in the McManus girl's room. Defendant did have a cut on his finger.
(5) The perpetrator of the McManus rape wore a ski mask and wielded a knife. A ski mask and knife were found in defendant's room.
(6) Blood was found on the ski mask although it was defendant's type.
(7) Defendant's fingerprints were found at the point of entry into the McManus home.
The conviction should be affirmed. I respectfully dissent.

ON REHEARING
CRAIN, Judge.
In the original opinion in this case, the majority found that the other crime evidence which was admitted into evidence was not "clear and convincing" as to defendant's identity in having committed the other crime. Consequently, it was held that the other crime evidence was improperly admitted, and the case was reversed and remanded for retrial. We adhere to the original opinion as to the "clear and convincing" standard for determining identity in prior crime evidence and our definition of "clear and convincing" therein. A rehearing was granted by this court for the purpose of reconsidering the proper standard of appellate factual review when a ruling on the admissibility of evidence in a criminal case requires a determination of facts by the trial court.
We hold on rehearing the Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), standard to be applicable under these circumstances. Thus, the trial court's findings of fact in rulings on the admissibility of evidence should not be disturbed unless clearly wrong.[1] See State in the Interest of Racine, 433 So.2d 243 (La. App. 1st Cir.1983), writ denied, 440 So.2d 151 (La.1983).
To determine if defendant's identity in committing the other crime has been established by "clear and convincing" evidence in the instant case, we must balance the facts militating against such proof (listed in the majority opinion) against the facts militating in favor of such proof (listed in *944 the dissenting opinion) and determine if the ruling of the trial court is clearly wrong. As indicated in Racine, 433 So.2d at 245, under the "clearly wrong" standard we may not disturb reasonable evaluations of credibility and reasonable inferences determined by the trial court. However, we do have latitude to evaluate overall weight (credibility is an element of weight) of the evidence in determining whether the trial court was reasonable in its evaluations, and thus not clearly wrong. Racine, 433 So.2d at 245.
Whether defendant's identity in committing the other crime was proved by clear and convincing evidence comes down to the question of how did his fingerprints arrive at the point of entry into the house where the other crime was committed. Two theories were presented to the district court to explain the presence of the defendant's fingerprints on the broken window: (1) that of the State that they were made when the defendant made his unauthorized entry into the house; and (2) that of the defendant in his own testimony that he observed the broken glass and inspected it out of curiosity but did not enter the dwelling. The ruling of the district court reflects that the testimony of the defendant was rejected as not credible. A review of all of the evidence does not reflect that this determination is unreasonable, and accordingly, it must be accepted by us. Once the defendant's hypothesis of innocence falls, the only remaining reasonable inference that can be made from the fact of the defendant's fingerprints on the broken glass at the point of unlawful entry is that the defendant made them during the unlawful entry when the other crime was committed. State v. Captville, 448 So.2d 676, 680 (La.1984). After balancing this factual inference with the conflicting facts set forth above, we conclude that the district court was not clearly wrong in determining that the overall weight of the evidence was "clear and convincing" that the defendant committed the other crime.
Accordingly, for the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
SHORTESS, J., dissents for reason originally assigned.
NOTES
[1] See State v. Prieur, 277 So.2d 126 (La.1973).
[2] The objection did not relate to sufficiency of the Prieur notice, but to the use of other crime evidence.
[3] La.R.S. 14:60.
[1] In dealing with the standard of appellate review in cases where the trial court has admitted evidence based on factual conclusions, such as whether a confession is admissible as free and involuntary, appellate courts have interchangeably referred to the "much discretion" of the trial court, and the absence of "clear abuse of discretion". State v. West, 419 So.2d 868 (La. 1982); State v. Thomas, 439 So.2d 629, (La.App. 1st Cir.1983); State v. Easley, 432 So.2d 910 (La.App. 1st Cir.1983). Those terms beg the question and furnish appellate courts no guidance for determining when the trial court has or has not abused its much discretion. Our holding is that the trial court does not abuse its discretion unless its findings of fact are clearly wrong. This should not be confused with the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard (nor the La.C. Cr.P. art. 821 standard) which applies only to review of the facts on the merits.