461 So.2d 644 (1984)
STATE of Louisiana
v.
Dixon W. CAMPBELL.
No. 84 KA 0650.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
*645 Ossie Brown, Dist. Atty. by Donald Wingerter, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Gail Ray, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
*646 CARTER, Judge.
This is an appeal from a conviction of attempted forcible rape.

FACTS
During the late evening hours of September 15, 1982, the victim arrived in Baton Rouge from Richmond, Virginia on a business trip for her employer. She checked into the Bellemont Hotel and had a drink in her room. She then went over to the coffee shop to get something to eat. Upon finding it closed, the victim went to the piano bar.
From this point on, the testimony as to the circumstances surrounding the sexual intercourse is conflicting. The victim's version is as follows: While at the piano bar, the defendant approached her and asked her to dance. They danced and had a few drinks together. When she decided to leave the piano bar, the defendant asked and was permitted to escort her to her room. Upon arriving at the room, the victim removed the room key from her pocketbook, whereupon the defendant took it out of her hand and opened the door. The defendant then entered the room and turned on the light and the television set. The victim then asked the defendant to leave, telling him that she had a meeting in the morning. She continued to ask the defendant to leave; however, he refused. Suddenly the defendant threw the victim on the bed, put his hand around her throat, and started choking her. He also told her if she made any noise, he would kill her. The victim began screaming, but the defendant put his hand over her mouth. The defendant pinned her down, took her pants off, ripped her blouse and underwear, and engaged in vaginal intercourse with her. When the defendant began to perform anal intercourse with her, the victim was finally able to push him away. When faced with this resistance, defendant started beating the victim with his fists around her face and head. In the process of leaving the scene of the attack, defendant threatened the victim telling her not to report the incident or he would kill her. He said he had a gun and showed her what appeared to be a sheriff's deputy card. At this time, he ripped the telephone wire out of the wall and left. The victim was unable to rouse the occupants of the adjacent rooms, so she went to the hotel reception desk and reported the attack to security. The police then arrived, and she was taken to Doctors Memorial Hospital for examination.
The defendant gave a totally different version of the events which led up to the sexual encounter. Defendant testified that at approximately 9:30 p.m. on the night in question, he left the front bar at the Bellemont Hotel and proceeded to the piano bar. Upon entering the piano bar, he got a drink and sat down. After he was there approximately fifteen or twenty minutes, the victim approached the defendant and asked if she could join him. The two then had a few drinks and danced several dances together. The couple danced closely, which aroused defendant. Sometime between 11:00 p.m. and midnight, the victim asked defendant to walk her to her room. After he opened the door and handed the victim the keys, she began kissing him. The couple then engaged in intercourse. Afterwards, defendant dressed and told the victim good night. The defendant denied hitting the victim or forcing the sexual intercourse in any matter. He further denied attempting anal intercourse or pulling the phone wire out of the wall, although he remembered the phone falling to the floor.
Several days after the incident, the victim identified the defendant from a photographic line-up. With this information, Detective Charles Mondrick, an investigator with the Sex Crimes Unit of the Baton Rouge Police Department, located defendant's place of employment, Allied Builder's Supply (Allied) in Baker, Louisiana. Detective Mondrick proceeded to this place of business to talk with the proprietors, John and George Kennedy, to gather information on the defendant. Upon being advised of the purpose of Mondrick's visit, John Kennedy, an attorney, was hesitant to supply the information because not only was *647 Campbell his employee, but he was a friend and possibly a client. Kennedy said he would allow the police officer to question defendant on company time, but that he would advise the defendant not to make a statement.
Since Detective Mondrick was outside the corporate limits of the City of Baton Rouge, he called the Baker Police Department for assistance. Sergeant Charles Smith of the Baker Police Department arrived and the two were standing outside Allied when they detained defendant as he exited the building. Defendant was advised that he was under investigation for rape, and the officers advised defendant of his Miranda rights. Defendant then volunteered that he had been at the Bellemont Hotel that night. Detective Mondrick interrupted him and again advised him that he had the right to have an attorney present and that he did not have to make a statement. Defendant then continued that while at the Bellemont that night, he had met a female. At this point, Detective Mondrick stopped defendant and asked him to accompany him to the office in Baton Rouge, which defendant agreed to do. When Detective Mondrick went inside the building to advise Kennedy of the situation, the defendant told Sergeant Smith that he did not understand what was happening to him. Defendant admitted having consensual sexual intercourse with the victim, but was afraid she was trying to make trouble for him.
Defendant, Dixon W. Campbell, was charged by indictment with forcible rape, in violation of LSA-R.S. 14:42.1. A jury convicted defendant of attempted forcible rape, and he was sentenced to serve ten years at hard labor, two of which are to be served without benefit of parole, probation, or suspension of sentence. Defendant appeals, alleging the following four assignments of error:
1. The trial court erred in admitting Mr. Jerry Miller as an expert in the field of serology;
2. The trial court failed to suppress a statement made by defendant;
3. The evidence was insufficient to support the conviction; and,
4. The trial court imposed an excessive sentence.

ASSIGNMENT OF ERROR NO. 1[1]
In this assignment of error, defendant contends the trial judge erred when he admitted Jerry Miller as an expert in the field of serology. We first note that since both the defendant and the victim testified that sexual intercourse occurred, the testimony of the serologist was of little or no evidentiary value in the case sub judice.
Furthermore, competency of an expert witness normally is a question of fact to be resolved by the trial judge, and his ruling thereon will not be overturned on appeal absent an abuse of discretion. State v. Knighton, 436 So.2d 1141 (La. 1983); State v. Coleman, 406 So.2d 563 (La.1981). The expert in the instant case testified that he had six years experience as a forensic scientist in the area of serology, while employed at the Louisiana State Police Crime Laboratory. Mr. Miller had completed a two-week forensic course at Southeastern Missouri State University and a hair and fiber analysis course at the FBI academy. He had a BS degree in Zoology from Southeastern Louisiana University and worked at Assumption General Hospital as a lab technician for approximately six months. Mr. Miller belongs to the Louisiana Association of Forensic Scientists and attends seminars once or twice a year, and he lectures at LSU and the State Police Basic Academy. He has also been qualified as an expert serologist several times before in East Baton Rouge Parish.
Considering Mr. Miller's background, his education and experience, we cannot say that the trial judge abused his wide discretion in accepting Mr. Miller as an expert in the field of serology.

*648 ASSIGNMENT OF ERROR NO. 2[2]
In this assignment of error, the defendant contends the trial judge should have suppressed his statement to police that he was at the Bellemont Motor Hotel on the night in question and that he had engaged in consensual sexual intercourse with the victim. Defendant reasons that because his right to counsel was violated, his inculpatory statements should have been suppressed.

A. WAIVER OF RIGHTS
The statements of an accused, whether exculpatory or inculpatory, when made during a custodial interrogation should be suppressed unless the accused is first advised of, and subsequently waives his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). La. Const. of 1974, art. I, § 13. When an accused asserts his right to counsel, the police must scrupulously honor the invocation of the right and interrogation must cease. State v. Harper, 430 So.2d 627 (La.1983); State v. Thucos, 390 So.2d 1281 (La.1980); State v. Manning, 380 So.2d 46 (La.1980).
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, decided on May 18, 1981, the Supreme Court held that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. The Court further held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. State v. Arceneaux, 425 So.2d 740 (La.1983); State v. Shea, 421 So.2d 200 (La.1982) (on rehearing); State v. McCarty, 421 So.2d 213 (La.1982).
Detective Mondrick and Sergeant Smith testified at trial that the defendant was advised of his constitutional rights and that he appeared to understand his rights. Defendant also testified that he was given his rights and that he understood them.
Therefore, as defendant was clearly advised of his Miranda rights, the question then becomes whether Campbell ever invoked his right to remain silent and his right to counsel and then subsequently waived them.
Defendant testified that after being read his rights, he told Detective Mondrick that he was present at the Bellemont on the night the alleged rape occurred, but that he did not wish to say anything else. Defendant testified that Sergeant Smith did not question him, but that Smith merely responded to his remarks that someone was trying to railroad him. Defendant testified that he spoke freely with Sergeant Smith because he had known him for several years and he was trying to ease his mind. Defendant did not think there was any problem with his talking to the police officers because he assumed John Kennedy had given the officers permission to speak with him, but admitted that he had not spoken to John or George Kennedy prior to talking with the officers.
John Kennedy testified that he directed the police officers not to talk to the defendant unless he was present. He acknowledged that Campbell had not yet consulted him about representation, but that he anticipated representing Campbell. This testimony was contradicted by George Kennedy, who testified that he did not recall John telling Detective Mondrick not to talk to Campbell out of John's presence and that John made no predictions as to how he would advise Campbell.
Detective Mondrick testified that John Kennedy did not tell him not to question *649 Campbell, nor did Kennedy say he was Campbell's attorney.
In reviewing the record, the defendant clearly did not invoke his right to remain silent or his right to counsel. Although advised several times during the course of the conversation with police officers that he did not have to make a statement and that he had the right to have an attorney present if he made a statement, the defendant spontaneously made inculpatory statements to the effect that he had been at the Bellemont on the night in question and that he had engaged in consensual sexual intercourse with the victim. Under the facts of this case, we must conclude that the defendant did not invoke his Miranda rights prior to making the inculpatory statements.

B. ADMISSIBILITY OF THE INCULPATORY STATEMENTS
In order for a confession or inculpatory statement to be introduced at trial, the state must affirmatively show that it was voluntarily given and was not obtained through fear, duress, intimidation, menaces, threats, inducements or promises. State v. Eaker, 380 So.2d 19 (La.1980). The trial court's conclusions as to the credibility of witnesses testifying as to voluntariness will not be disturbed unless clearly wrong. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(B); State v. Walter E. Johnson, 458 So.2d 937 (La.App. 1st Cir.1984).
The burden is upon the state to show affirmatively that the statements were given freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; State v. Mitchell, 437 So.2d 264 (La.1983); State v. Jackson, 414 So.2d 310 (La.1982). The admissibility of an inculpatory statement is a question of fact for the trial judge, and his rulings on credibility of witnesses on the issue are not to be overturned unless clearly wrong. State v. Johnson, supra.
The record reflects ample evidence that the defendant voluntarily made the inculpatory statements. Detective Mondrick and Sergeant Smith testified at trial that the defendant was not threatened, abused or otherwise intimidated in any way to secure a statement. The defendant also testified that he agreed to go downtown to make a statement and that he voluntarily admitted to being at the Bellemont on the night of the alleged rape.
The trial judge concluded, and we agree, that the defendant's inculpatory statements were voluntarily made. Therefore, the trial judge properly admitted them into evidence.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment, the defendant contends that the state failed to satisfy the necessary burden of proof to convict defendant of attempted forcible rape.
In State v. Mathews, 375 So.2d 1165 (La. 1979), the Louisiana Supreme Court determined that the United States Supreme Court ruled in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime had been proven beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. LSA-C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Norman, 448 So.2d 246 (La.App. 1st Cir. 1984), affirmed in part and reversed in part on other grounds, 452 So.2d 1178 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
In the case sub judice, it is uncontroverted that sexual intercourse took place between the defendant and the victim. The only issue is whether the act was done without the victim's consent. The jury's verdict indicates that after considering *650 the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victim and rejected the testimony of the defendant. Where there is conflicting testimony about factual matters, the resolution of which depends on the determination of the credibility of witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Norman, supra; State v. Kent, 434 So.2d 1258 (La. App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact, and this court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. of 1974, art. V, § 10(B); State v. Norman, supra; State v. Korman, supra. This court is constitutionally precluded from acting as a "13th juror" in assessing what weight to give the evidencethat determination rests solely on the discretion of the trier of fact. The trier of fact may accept or reject in whole or in part the testimony of any witness. State v. Norman, supra; State v. McDowell, 427 So.2d 1346 (La.App. 2nd Cir.1983); Holmes v. Southeastern Fidelity Ins. Co., 422 So.2d 1200 (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983). The testimony of the victim and the corroborating evidence introduced by the State are sufficient to prove the offense charged.[3]State v. Rives, 407 So.2d 1195 (La.1981); State v. Norman, supra.
Considering the above, it is clear that the evidence was sufficient for the jury to conclude that the state proved every element of the crime of attempted forcible rape. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the sentence imposed upon him is excessive. Defendant reasons the sentence of imprisonment at hard labor for ten years, two of which are to be served without benefit of parole, probation or suspension of sentence, is inappropriate for a conviction of attempted forcible rape.
The Louisiana Supreme Court has held that Article 1, § 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment and that although a sentence may be within statutory limits it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial judge is given wide discretion in the imposition of sentences within the statutory limits and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Prados, 404 So.2d 925 (La.1981); State v. Douglas, 389 So.2d 1263 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979); State v. Norman, supra.
LSA-R.S. 14:42.1 provides for a term of imprisonment not less than two nor more than forty years and contains a mandate that at least two years of such sentence be without benefit of probation, parole or suspension of sentence. The penalty provision in the attempt statute provides that the defendant shall be imprisoned in the same manner as for the offense attempted; however, the imprisonment shall not exceed one-half the longest term of imprisonment for the offense attempted. Accordingly, in sentencing the defendant convicted of the crime of forcible rape, the trial judge had the discretion to sentence the defendant to twenty years at hard labor and to require that all or a portion of the sentence for attempted forcible rape be without benefit of parole. See State v. Norman, supra.
*651 Defendant further contends that the trial judge failed to comply with the sentencing guidelines in LSA-C.Cr.P. art. 894.1. While a trial judge is not required to articulate every mitigating and aggravating circumstance at sentencing, he is required to give an adequate review of the guidelines under LSA-C.Cr.P. art. 894.1. State v. Grey, 408 So.2d 1239 (La.1982). When there is compliance with the sentencing criteria, a sentence will not be set aside in the absence of manifest abuse of discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984).
A careful review of the record satisfies us that the trial judge carefully considered LSA-C.Cr.P. art. 894.1 and substantially complied therewith. He noted that the defendant had a good work record, but he also noted that defendant had prior criminal convictions and previous arrests for sex-related offenses.[4] The trial judge concluded the defendant had a propensity to commit sexual offenses and that he was dangerous to society and that any lesser sentence would deprecate the seriousness of this crime. The ten-year sentence imposed in the instant case is one-half of the maximum which could have been imposed, and this sentence is not excessive.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note that appellant set forth in his brief four assignments of error. However, in one portion of the brief, the assignments of error are misnumbered.
[2] Defendant failed to file a motion to suppress evidence pursuant to LSA-C.Cr.P. art. 703; however, in fairness to the defendant, the trial judge permitted the defendant to raise his objection on the predicate at trial.
[3] The State presented the following evidence:

a) the victim's torn bra, slip, and blouse;
b) the telephone wire which had been ripped from the wall of the victim's motel room;
c) the testimony of Louisiana State Police forensic scientist, Mr. Jerry Miller, that the bedspread from the victim's motel room contained seminal fluid; and,
d) the testimony of Dr. D.D. Bryant of the Baton Rouge Rape Crisis Center that when he examined the victim the night of the rape, she had a bruised temple and a facial laceration.
[4] The type of criminal activity a court may consider in a sentencing proceeding is not limited to prior convictions or by the rules of evidence. State v. Washington, 414 So.2d 313 (La. 1982); State v. Donald Johnson, 459 So.2d 1316 (La.App. 1st Cir.1984) (under docket # 84 KA 0362); State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983).