WATKINS, Judge.
Eric Rodney Brown was indicted by the East Baton Rouge Parish grand jury for aggravated rape, aggravated kidnapping and armed robbery in violation of LSA-R.S. 14:42, 44 and 64, respectively. Defendant pled not guilty to all three charges. Thereafter, defendant filed a motion to suppress his confession. The trial court denied the motion. Defendant withdrew his former not guilty pleas and pled guilty to an amended charge of first degree robbery, which is a lesser and included offense to armed robbery.[1] See LSA-C.Cr.P. art. 558. He reserved his right to appellate review of the trial court’s denial of the motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). The court sentenced defendant to serve a twenty year term of imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence.
Defendant now appeals, alleging as his sole assignment of error the denial of his motion to suppress his confession. He essentially argues that, because he invoked his constitutional right to counsel, his subsequent police-initiated interrogation rendered his confession inadmissible under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
The record reflects that during the early morning hours of August 17, 1985, deputy Louis Russell of the East Baton Rouge sheriffs office was on patrol in his marked police unit. While stopped at a traffic light at the intersection of Plank Road and Hooper Road, he observed a small Toyota at a gas station across the street. Two black males were inside the Toyota, and the car had just pulled away from a gas pump. When the occupants of the car saw Russell, they backed the car up. Russell then focused his attention on the Toyota as he traveled past it. While in the process of positioning his police unit to get behind the Toyota in order to obtain its license number, the vehicle’s trunk suddenly popped open; and a partially clad white female, the victim of the instant offenses, jumped from the trunk and ran toward the gas station. Russell concluded that the woman was okay and began pursuing the Toyota. The pursuit ended when the driver drove the Toyota into a ditch, wrecking the vehicle. The driver exited the vehicle and ran from the scene. The occupant of the passenger side of the vehicle, defendant’s co-indictee, Ronald Keller, experienced difficulty in getting out of the vehicle, enabling Russell to apprehend him. After Keller was advised of his Miranda rights, he indicated that defendant was his accomplice and directed the police to the location where the victim had been abducted. Keller further informed the police in regard to where they might find defendant. The police then proceeded to the location, found defendant there, arrested him at about 6:30 a.m., and transported him downtown.
The testimony at the suppression hearing of detective Don Strickland, indicates that he and detective Norton advised defendant of his Miranda rights prior to defendant’s booking at 9:00 a.m. Defendant signed a consent to questioning form. However, no questioning actually took place on August 17 because defendant stated that he did not want to talk at that time and that he wanted to talk to a lawyer. Strickland testified that defendant’s booking was then completed and there was no other attempt to talk to defendant on August 17.
Strickland testified that, during the morning of August 18, he was contacted by Sgt. David Blackwell who at the time was talking to defendant in regard to an unrelated burglary. Blackwell and other officers investigating the unrelated burglary had removed defendant from his cell to talk to him about the burglary. Blackwell further advised Strickland that he wanted to question Strickland in regard to the instant case and what he knew about defendant. Strickland then discussed the matter with Blackwell.
After Strickland’s discussion with Blackwell, defendant asked that he be allowed to talk to his father, Esaw Brown. Pursuant to a request from Blackwell, Esaw Brown came downtown and was permitted to talk *117 to defendant in privacy. Immediately after defendant talked to his father, he went into an office with Strickland and started talking about the instant rape charge. Defendant and Strickland were the only two persons present at the time. Defendant initially made an oral statement; and, thereafter, he made a tape recorded one.
On direct examination by the prosecutor, Strickland testified as follows:
Q. After you finished talking to [Blackwell] what steps did you take to re-question Erie Brown, if any?
A. At that time I asked Mr. Brown if he wanted to talk to me and he requested that he be allowed to talk to his father — uh—which he did. Then he stated he would talk to us.
[emphasis added]
Thereafter, during cross-examination, Strickland testified as follows:
Q. Did you ask him if he wanted to talk about the rape prior to the time he talked to his father?
A. No, Ma’am.
Q. It was after he talked to his father?
A. Uh-huh.
Q. So until he had had the discussion with Blackwell and his father you still hadn’t said anything to him at this point?
A. No, Ma’am.
Q. Now he didn’t come up to you and say I have changed my mind and I want to talk to you? You approached him and said, do you want to talk to me about the rape now?
A. Yes, Ma’am.
[emphasis added]
The statements of an accused, whether exculpatory or inculpatory, when made during a custodial interrogation should be suppressed unless the accused is first advised of, and subsequently waives his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). La. Const. art. I, § 13. When an accused asserts his right to counsel, the police must scrupulously honor the invocation of the right and interrogation must cease. State v. Harper, 430 So.2d 627 (La.1983); State v. Thucos, 390 So.2d 1281 (La.1980); State v. Campbell, 461 So.2d 644 (La.App. 1st Cir.1984), writ denied, 466 So.2d 1299 (La.1985).
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that, when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interro-gatin even if he has been advised of his rights. The court further held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. State v. Arceneaux, 425 So.2d 740 (La.1983); State v. Campbell, supra.
Edwards set forth a “bright-line rule” that all questioning must cease after an accused requests counsel. Solem v. Stumes, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984); Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). In Smith v. Illinois, the Supreme Court stated:
In the absence of such a bright-line prohibition, the authorities through “badgerpng]” or “overreaching” — explicit or subtle, deliberate or unintentional— might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel’s assistance. 469 U.S. at 98, 105 S.Ct. at 494.
We find that the statements made to detective Strickland on August 18, 1985, and the tape recordings of those statements were obtained in violation of the rule enunciated in Edwards v. Arizona.[2] *118 Strickland’s testimony showed that on August 17, when he attempted to interrogate defendant, defendant asserted his constitutional right to remain silent and his constitutional right to counsel. Thereafter, Strickland made no further attempt to interrogate defendant on August 17.
As a consequence of defendant’s assertion of his constitutional right to counsel, he was not subject to further interrogation by the police until counsel was made available to him, unless he himself had initiated further discussions with the police. The record reflects that counsel was not made available to defendant, and Strickland’s testimony clearly and unequivocally established that he and not defendant initiated further discussion concerning the instant rape charge on August 18. We note that, while Strickland initially testified on direct examination that he first asked defendant if he wanted to talk to him about the instant rape before defendant talked to Esaw Brown on August 18, during cross-examination he apparently corrected himself by stating that he did not make the request until after defendant talked to Esaw Brown. In any event, Strickland’s testimony does not waver in regard to his having initiated the request to resume discussions between himself and defendant. Accordingly, the statements made by defendant to Strickland on August 18, both oral and tape recorded, must be suppressed. Thus, the trial court erred by failing to grant defendant’s motion to suppress the statements.
The conviction and sentence are reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.

. The state nolle prosequied the aggravated rape and aggravated kidnapping charges.

. We find it unnecessary to address and accordingly express no opinion as to whether or not the intervening questioning of defendant by Blackwell and other officers in regard to the unrelated burglary, might have violated the rule in Edwards v. Arizona.
*118 We do, however, note the following:
In Smith v. Illinois, [supra] the Supreme Court characterized the Edwards holding as a "bright-line rule” which prohibited all police overreaching, be it "deliberate or unintentional.” This suggests, as the lower courts have consistently held, that police conduct can violate the Edwards prohibition even when the particular officer who makes contact was unaware of the defendant’s prior invocation of his right to counsel. Sometimes this interpretation of Edwards is stated in terms of "others within the same investigatory authority," and sometimes it is stated more broadly as extending “to all law enforcement officers who subsequently deal with the suspect.” [footnotes omitted] W. Lafave & J. Israel, Criminal Procedure § 6.9, at 539 (1984).