577 So.2d 354 (1991)
STATE of Louisiana
v.
Edward RAY.
No. 90/KA/0771.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Writ Denied May 24, 1991.
*355 John Walker, Asst. Dist. Atty., Houma, for plaintiff and appellee, state.
Roy Jefferson, Indigent Defender Bd., Houma, for defendant and appellant, Edward Ray.
Before SAVOIE, CRAIN and FOIL, JJ.
*356 SAVOIE, Judge.
Defendant, Edward Ray, was charged by bill of information with the forcible rape of a minor teenage girl, a violation of La.R.S. 14:42.1. He pled not guilty and, following a jury trial, was found guilty as charged. He was sentenced to serve twenty-three (23) years at hard labor, including two years without benefit of probation, parole or suspension of sentence. He filed this appeal, urging eight assignments of error as follows:
1. The trial court erred by not allowing the jury during their deliberations to view medical records and reports relating to the physical and medical examinations of the victim conducted as a result of the alleged offense involved herein.
2. The trial court erred in sustaining certain objections of the State which prevented the jury from hearing testimony from two defense witnesses concerning statements made by the victim relating to her prior sexual conduct.
3. The trial court erred in sustaining the State's objection(s) to questions made by the defense to the victim concerning certain prior statements she made to third parties relating to her prior sexual conduct.
4. The trial court erred in allowing the assist nurse to read and testify from and consequently, interpret, medical records and reports compiled and completed by the victim's examining physician, Dr. William Grant.
5. The trial court erred in imposing an excessive sentence.
6. The verdict of the jury was contrary to the law and evidence.
7. The trial court erred in denying defendant's Motion For New Trial.
8. The trial court erred in denying defendant's Motion For Post Verdict Judgment of Acquittal.
On February 17, 1989, the victim, a teenage girl, went to her sister Mary's apartment (3-4 blocks from her home) to spend the night. Mary lived with her boyfriend, Edward Ray (the defendant), and her two sons, ages 9 and 6. After the victim arrived, defendant dressed and left to go to a party; Mary stayed home. The victim watched television with Mary and her older nephew; the younger nephew was sleeping at another aunt's house. Later, the victim went into the children's bedroom to go to sleep. Dressed in nightclothes, the victim went to sleep in her younger nephew's vacant bed. Apparently, sometime after 12:00 a.m. on February 18, the victim was awakened from her sleep when she heard defendant come into the dark room. He got into the bed with the victim and threatened her with a knife if she did not submit to him. Defendant raised up the victim's nightgown and took off her underwear. The victim told defendant to get off her and leave the room. She also tried to push him away. Defendant persisted and penetrated her vagina with his penis. The victim was able to knock on the wall; Mary heard this and came into the room. As Mary entered, defendant jumped on the side of the bed. Subsequently, Mary called her mother and told her to come and get the victim. The victim's mother called the police and defendant was arrested.
During the trial, the victim testified regarding defendant's actions in threatening and raping her. She admitted telling another sister, Annette, that defendant did not rape her. The victim stated that her reason for doing this was because her sister Mary was mean to her after the incident. The victim also denied stating that she lied about the rape because she thought she was pregnant with her boyfriend's child. The victim was also questioned about a statement she and her mother signed. The "dismissing affidavit" states the victim wishes to withdraw the charge of forcible rape against the defendant. The affidavit further states that she desires the matter be dismissed by the district attorney and that she is signing the statement of her own free will. The victim's testimony regarding this statement is confusing. At first the victim stated she didn't remember signing the statement; then she testified that she did not understand the statement and that she signed it because she was scared.
*357 The victim's mother testified that her daughter, the victim, was upset when the mother arrived at Mary's home. She denied that the victim later told her defendant did not assault her.
Mary testified that about 4:20 a.m. on February 18, she woke up when she heard defendant come home, undress and go to the bathroom. She heard the victim talking so she went into the bedroom and saw defendant sitting on the bed in which the victim was lying. Mary further stated that defendant jumped off the bed as she came in; she saw his unerect penis on the outside of his boxer style underwear. Mary also stated that she was angry when she told the police that defendant was on top of her sister when she walked in. According to Mary's testimony, the victim had on her gown, duster and underwear when she walked in the room.
Sergeant Ben Ledell, who investigated the rape complaint, testified that the victim stated that she was spending the night with her sister Mary when defendant came into the bedroom and had sex with her. He further testified that Mary corroborated the victim's story and appeared "mad" that defendant had raped her sister.
Defendant's witnesses consisted of Donald Stovall and Kerry Sims. These witnesses were ministers, who testified that they spoke with the victim about the alleged rape. Donald Stovall stated that the victim told him the rape did not happen. He further stated he believed that the victim signed some documents in order for the district attorney to drop the charges against defendant; he did not positively know if the victim did this. On cross-examination, Stovall stated he was not aware of Mary's statement that she saw defendant jump from the victim's bed with his genitals exposed.
Kerry Sims testified that the victim told him defendant did not rape her. He further testified that the victim stated, "she thought she was pregnant and so she had to put it on somebody, ... so she told her mama that Edward raped her."
On rebuttal, Robert Bergeron, a district attorney's office investigator, testified that he was present when Sims brought the victim into the district attorney's office to recant her story of the rape. However, Bergeron testified that the victim did not recant; she stated she was not lying when she gave her statement the night of the alleged rape.

JURY INSPECTION OF WRITTEN EVIDENCE

(ASSIGNMENT OF ERROR NUMBER ONE)
By means of assignment of error number one, defendant contends that the trial court erred in refusing to allow the jury to review medical records during their deliberations. During deliberations, the jury requested that they be allowed to see the medical records which were introduced into evidence. The trial court, citing La.C.Cr.P. art. 793, refused the request.
La.C.Cr.P. art. 793 states:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
Defendant argues that the prohibition in art. 793 applies to "depositions and/or the actual written transcription of verbal testimony adduced at trial."
The general rule as expressed by La.C.Cr.P. art. 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103, 1109 (La. 1982); State v. Rodriguez, 476 So.2d 503, 508 (La.App. 1st Cir.1985).
The medical records themselves were not documents which raised an issue in this case. The only reason that these *358 records could be of any assistance to the jury was if they were examined for their verbal contents. See, State v. Johnson, 541 So.2d 818, 824 (La.1989). Thus, it is apparent that the jury wanted to re-examine the verbal contents of the medical records. Such an examination is prohibited by La.C.Cr.P. art. 793.
Accordingly, this assignment of error lacks merit.

EVIDENCE OF VICTIM'S PRIOR SEXUAL ACTIVITY

(ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE)
By means of assignments of error numbers two and three, defendant contends the trial court erred in not allowing testimony, for impeachment purposes, of two defense witnesses regarding the victim's prior sexual conduct. Defendant contends that the victim accused him of rape because she did not want her family to know she might be pregnant with her boyfriend's child. In brief, defendant argues he sought to impeach the victim's testimony when she denied, on cross-examination, making statements as to why she falsely accused defendant. The trial court sustained the State's objections to this line of questioning based upon the rape shield statute in La.C.E. art. 412. Defense counsel then made a proffer of the victim's testimony. In this proffer, the victim denied telling Reverend Sims that the reason she stated defendant raped her was because she thought she was pregnant with her boyfriend's child.
Furthermore, in proffered testimony, Reverend Sims testified he contacted the victim at Mary's request. The victim told him that she had sex with her boyfriend the night before the alleged rape. Reverend Sims further testified that the victim told him she thought she was pregnant and her mother thought she was a virgin so she had "to blame it up on somebody." In more proffered testimony, another sister of the victim, Annette, stated that the victim changed her statement twice; after claiming defendant raped her, the victim changed her story and then changed back to the original statement.
The record before us reveals that the jury did hear testimony which included questioning regarding the victim's reason for the alleged false accusation of defendant. The pertinent part of the cross-examination of the victim is as follows:
Q. Do you ever remember talking to the Reverend Terry [sic] Sims about you and your boyfriend?
A. No, sir.
Q. Do you ever remember telling him that the reason why you said Edward did this was because you thought you might be pregnant for your boyfriend, Michael Stewart?
A. I never told him that.
Q. You never remembered telling him that you thought you might be pregnant for Michael
MR. SCHOONENBERG:
I'm going to object to that prior sexual activity. Counsel knows, based on the rape shield statute, it is inadmissible in Court.
THE COURT:
Objection sustained.
MR. JEFFERSON:
Your Honor, for the record, it'sit establishes a motive for the possible
THE COURT:
Objection sustained. If you want to argue it, I'll excuse the jury.
MR. JEFFERSON:
Q. Do you remember telling any of these people that this never happened?
A. No, sir.
In his testimony, Reverend Kerry Sims testified about his conversation with the victim regarding the alleged rape. The pertinent part of his testimony is as follows:
Q. Have you had occasion to speak with [the victim] concerning her alleged rape by Edward Ray?
A. I did.
Q. And what did she tell you?
A. She told me on the phone that to see can I get the charges dropped `cause *359 Edward didn't rape herthat she got caught with her boyfriend.
* * * * * *
Q. Now it's my understanding that [the victim] told you over the telephone that Edward had not raped her.
A. Correct.
Q. And [the victim] didn't call you?
A. No.
Q. Mary did.
A. Yeah.
Q. And Mary told you that [the victim] had something she wanted to tell you, right?
A. Yeah, talk to me about, correct.
* * * * * *
Q. So Mary said tell him what you told me?
A. She said tell him what you want to tell him and that's when she started telling me about what happened and that it wasn't so; that her mama thought she was a virgin and that she thought she was pregnant and so she had to put it up on somebody, so she told methat's her quote, that she told her mama that Edward raped her.
Q. She didn't say that she lured Edward into the bedroom for the elaborate scheme to prevent thisthis knowledge about her being a virgin, right; she didn't tell you that?
A. No. All she told me that her mama thought she was a virgin because she been having intercourse with her boyfriend.
MR. SCHOONENBERG:
Objection. Non-responsive. It's inadmissible.
Defendant has no grounds for his arguments in these assignments of error. The testimony which he contends was not allowed into evidence was in fact heard by the jury several times prior to the State's objection. Thus, these assignments lack merit.

READING OF MEDICAL RECORDS

(ASSIGNMENT OF ERROR NUMBER FOUR)
By means of assignment of error number four, defendant contends the trial court erred in allowing a nurse, during her testimony, to interpret the medical records of the physician, who examined the victim following the rape. Defendant argued that the testimony was hearsay and that Nurse Dickens (the nurse who obtained the victim's history at the hospital) was not qualified to testify as to medical opinions.
In brief, the state argues that Nurse Dickens only read from the hospital chart and did not offer her own opinion nor attempt to interpret the physician's opinion. It further argues that Dickens, a registered nurse, was qualified to at least read, if not interpret, the medical records.
In her testimony, Nurse Dickens referred to the victim's medical chart when testifying about the history that she took from the victim at the hospital prior to the rape examination. She was further asked to read the portion of the report completed by the examining physician during the physical examination. From our review of the trial transcript, it is clear that the physician completed that portion of the medical form regarding the physical examination and that Nurse Dickens was reading the physician's notes. In reviewing her testimony, we do not find that the State attempted to use Nurse Dickens as an "unqualified expert witness" to interpret the physician's report. Thus, we find no error.

EXCESSIVE SENTENCE

(ASSIGNMENT OF ERROR NUMBER FIVE)
In assignment of error number five, defendant contends that the trial court imposed an excessive sentence. The range of incarceration to which defendant may have been sentenced is imprisonment at hard labor for not less than five nor more than forty years. At least two years of the sentence must be served without eligibility for probation, parole, or suspension of sentence. *360 La.R.S. 14:42.1B. The sentence imposed here is slightly more than one-half of the maximum, and not apparently severe.
The trial court has wide discretion in the imposition of sentence, and a sentence will be disturbed on appeal only where the trial court has abused its discretion by imposing that sentence. Sentences in Louisiana for forcible rape generally reflect a range from ten to twenty-five years at hard labor, with parole excluded for periods of two to eight years. See State v. Green, 468 So.2d 1344, 1347 (La.App. 1st Cir.1985); State v. Nathan, 444 So.2d 231, 236-237 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984). Defendant entered the bedroom where the victim was sleeping and threatened to stab her if she did not submit. Furthermore, defendant's victim was a teenage girl. Considering the record before us, a sentence of twenty-three years at hard labor for this offense is not excessive.
This assignment lacks merit.

SUFFICIENCY OF THE EVIDENCE

(ASSIGNMENTS OF ERROR NUMBERS SIX, SEVEN, AND EIGHT)
By assignments of error numbers six, seven and eight, defendant contends that the verdict was contrary to the law and evidence, and the trial court erred in denying his Motions for New Trial and Post Verdict Judgment of Acquittal. Essentially, he argues that the victim's testimony was not credible and that the other evidence was circumstantial and did not support the verdict.
The standard of review when considering the sufficiency of evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime had been proven beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Campbell, 461 So.2d 644, 649 (La.App. 1st Cir. 1984), writ denied, 466 So.2d 1299 (La. 1985).
The jury's verdict indicates that, after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victim and rejected the defendant's theory that the victim was lying. Where there is conflicting testimony about factual matters, the resolution of which depends on the determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982); State v. Campbell, 461 So.2d at 650. The credibility of the victim's testimony is a matter of weight of the evidence. Furthermore, the testimony of the victim is sufficient to prove the offense charged. State v. Orgeron, 512 So.2d 467, 470 (La. App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). The victim's testimony indicates that, although she tried to resist, defendant threatened the victim with a knife, forced her to disrobe, and penetrated her vaginally.
Accordingly, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the crime of forcible rape. Therefore, these assignments lack merit.
CONVICTION AND SENTENCE AFFIRMED.