LANIER, Judge,
dissenting.
I dissent from the majority opinion because (1) it applies the wrong standard for appellate review of facts to evaluate the testimony of the appellant, (2) it fails to recognize that the appellee has presented enough evidence which, if believed, is sufficient to establish a prima facie case, (3) it erroneously fails to specifically address whether the testimony of the appellant is credible, and (4) it erroneously reverses the ruling which terminated the appellant’s employment, instead of ordering a remand for a new trial.
TESTIMONY OF THE WITNESSES
Dorothy Kelley testified she was a lieutenant and had worked at the Louisiana Correctional Institute for Women (LCIW) for eleven years. On February 14, 1984, someone called in sick. A replacement for that person was necessary because LCIW requires a certain quota of personnel for each shift. The phone numbers of LCIW employees are kept on a roster. At about 6:50 p.m., Kelley telephoned Smith at the number listed for Smith on the roster. A woman’s voice answered the phone, and Kelley asked to speak to Jessie Smith. The person who answered the phone said, “[T]his is Jessie Smith; what do you want?” Kelley identified herself and advised, “I need you to come in.” There was silence on the line. Kelley “repeated over and over, Officer Smith, ... I needed you to come to work.” There was a click on the phone, and Kelley hung up. Kelley dialed right back and got a busy signal. Kelley called back several more times and still got busy signals. Kelley reported the incident to Lieutenants Eubanks and Lewis. Kelley did not work on Smith’s shift. Kelley met Smith once or twice but could not identify Smith’s voice.
Helen Travis testified she was a Corrections Officer IV at LCIW in St. Gabriel. She wrote up a disciplinary report on Smith on February 15, 1984. In connection with the report, Travis interviewed Smith. Initially, Smith told Travis a man might have been in her apartment and might have answered the phone. Later, Smith told Travis that she allowed a woman to use her phone. Smith told Travis she did not speak to Kelley. Smith told Travis the number on the roster was the correct number and was the only number she had.
Nellie Fanguy testified she was an assistant warden at LCIW. Fanguy reviewed the disciplinary report on Smith and interviewed Smith in connection with the review. Smith confirmed that the number called by Kelley was Smith’s correct num *782 ber. Smith denied talking to Kelley and stated she had been in and out of her home during the day.
Jessie Mae Smith testified she lived with her son in an apartment complex of approximately 500 apartments. She had been employed at LCIW since August of 1983. She was not scheduled to work on February 14, 1984, and she did not recall where she was on that date. Gloria Shermeyer and Margie Nelsonick were at her house that day, but Smith did not know if they were there between 6:45 p.m. and 7:00 p.m. Smith did not instruct either Shermeyer or Nelsonick to answer her phone. She did instruct a Mr. Johnson to answer her phone. Smith’s son was home that day. Most of Smith’s neighbors do not have phones, and she allows them access to her phone. On February 14, 1986, Smith’s apartment was not locked, and, in any event, the lock was not “functional.” Smith did not receive a call from Lieutenant Kelley on February 14, 1984. When Smith came home on February 14, 1984, Shermeyer and Nelsonick arrived to use the phone. At that time, Smith did not ask them if they received any calls for her. Later, Smith asked Shermeyer and Nelsonick if they had answered her phone, and they told her no.
FINDINGS OF FACT
Based on the testimony of Kelley, the Referee found the following facts to be true:
7. Around 6:50 p.m., Lieutenant Kelley called appellant’s home at the telephone number listed on the shift roster.
8. A female answered the telephone and Lieutenant Kelly [sic] asked to speak with appellant.
9. The female identified herself as appellant. Thereafter Lieutenant Kelly [sic] told the female, ‘Officer Smith, this is Lieutenant Kelley. I need you to come in.’
10. There was silence on the other end of the phone. Lieutenant Kelley repeated the order, ‘Officer Smith, I need you to come to work.’
11. The voice on the other end of the phone did not reply.
12. Lieutenant Kelley held the phone a few minutes but got no reply and suddenly the call was disconnected.
13. Thereafter, Lieutenant Kelley tried unsuccessfully several times to call the number again; but, the line stayed busy.
The Referee rejected the testimony of Smith with the following rationale:
The only evidence offered by appellant was her own self-serving testimony that she did not receive a direct order from Lieutenant Kelley to report to work. Appellant failed to call the other two witnesses who might have been at her home at the time this call was placed. Because their testimony would logically be part of appellant’s case, and their failure to testify being unexplained, it must be presumed that their testimony would not have aided appellant’s case. Ryder v. Department of Health and Human Resources, 400 So.2d 1123 (La.App. 1st Cir.1981). Therefore, the Referee finds appellant’s testimony lacking credibility and further finds that it was more probable than not that appellant did receive a direct verbal order via telephone from Lieutenant Kelley on February 14, 1984, to report to work.
STANDARD FOR APPELLATE REVIEW OF FACTS
The majority applies the manifest error— clearly wrong standard for appellate review of facts to review all of the factual findings herein, citing Howard v. Housing Authority of New Orleans, 457 So.2d 834 (La.App. 1st Cir.1984). However, this standard of review is only applicable to the testimony of Kelley, Travis and Fanguy; it is not applicable to the testimony of Smith. By applying this standard to the testimony of Smith, the majority fell into error.
The Referee rejected the testimony of Smith as not credible, in part, because she failed to call Shermeyer and Nelsonick as witnesses on her behalf. The majority correctly holds that no adverse inference arises from the failure to call these wit *783 nesses under the facts and circumstances of this case and that the Referee fell into error as a matter of law by using that inference as a basis for not accepting Smith’s testimony.[1] This legal error has interdicted the Referee’s factual finding on Smith’s credibility.
Ordinarily, findings of fact are reviewed on appeal under the manifest error (clearly wrong) standard. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). However, where some legal error interdicts the fact-finding process, the manifest error — clearly wrong standard for appellate review of facts no longer applies, and an appellate court must then make its own independent review of the record and determine the facts by a preponderance of the evidence. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980); Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Thus, in reviewing Smith’s testimony and credibility, we may make our own independent review of the record and determine facts by a preponderance of the evidence; with reference to the testimony and credibility of Kelley, Travis and Fanguy, we are bound by the manifest error — clearly wrong rule. Picou v. Ferrara, 483 So.2d 915 (La.1986).
SUFFICIENCY OF THE APPELLEE’S EVIDENCE
The Referee obviously accepted the testimony of Kelley, Travis and Fanguy as credible and accepted it. Based on this testimony, the Referee found that the following pertinent facts were proven: (1) Kelley personally placed a telephone call to the roster number listed for Smith (which Smith confirmed to Fanguy was her correct number); (2) a woman answered the telephone and identified herself as Smith; and (3) Kelley told the woman answering the phone and identifying herself as Smith to “come to work.” A review of the record shows these factual findings are not clearly wrong.
The majority correctly observes that the appellee bears the burden of proving the infraction charged by a preponderance of the evidence. In Harrigan v. Freeman, 498 So.2d 58 (La.App. 1st Cir.1986), there is an excellent discussion of this burden of proof as follows:
This burden may be met by either direct or circumstantial evidence.... Proof by a ‘preponderance of the evidence’ exists when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not....
The burden is on the plaintiff to initially establish a prima facie case, and the failure to establish such a case defeats his cause of action_ Prima facie evidence is evidence sufficient to establish a given fact, which if not rebutted or contradicted will remain sufficient....
Once a prima facie case has been established by the plaintiff by a preponderance of the evidence, the burden shifts to the defendant.
The facts set forth above, which were proven by the appellee and accepted as true by the Referee, are sufficient to prove a prima facie case that Smith answered the phone and received Kelley’s order. In Palos v. United States, 416 F.2d 438, 440 (5th Cir.1969), appears the following:
The second alleged error is that testimony relating to the monitored telephone call was improperly admitted because the government agent who testified could not identify the voice of the person called as that of Palos. Circumstantial evidence however can be used to establish the identity of the person called.... Here, Villar dialed a number registered to the appellant. When the phone was answered, Villar asked ‘Palitos?’ (a name under which appellant was known) and received a response ‘Yes, this is he’. We think this evidence was sufficient to *784 make out a prima facie case from which the jury could have concluded that the appellant was a party to the conversation.
In E. Cleary, McCormick’s Handbook of the Law of Evidence, § 226, p. 554 (2nd ed. 1972), appears the following:
A somewhat easier problem is presented when the witness testifies that he himself placed a telephone call to a number listed to X, and that the person answering identified himself as X. In such a situation the accuracy of the telephone system, the probable absence of motive to falsify and the lack of opportunity for premeditated fraud all tend to support the conclusion that the self-identification of the speaker is reliable. Thus most courts today view proof of proper placing of a call plus self-identification of the speaker as sufficient proof of authenticity to admit the substance of the call.
[Emphasis added.] [Footnote omitted.]
See also United States v. Register, 496 F.2d 1072 (5th Cir.1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975); 5 J. Weinstein & M. Berger, Wein-stein’s Evidence, Commentary on Rules of Evidence for the United States Courts and Magistrates, § 801(b)(6)[02] at 901-80 and 81 (1978); West’s, Proposed Louisiana Code of Evidence, art. 901(A) and (B)(6)(a) and Official Revision Comment (h), pp. 200-201 and 207 (1986 Special Pamphlet).
SUFFICIENCY OF SMITH’S DEFENSE
The bedrock of Smith’s defense is her own testimony that she did not receive Kelley’s call. Smith does not seriously attack Kelley’s credibility and argues that, even if you assume Kelley’s testimony is true, the appellee has not met its burden of proof. Smith testified she lives in a housing project of approximately 500 units, most of her neighbors do not have phones and she lets some of them have access to hers and, on the day in question, the lock on her apartment door was not functional. From this, she argues that it “is just as probable, in view of the Record as a whole, that someone else answered that phone and identified herself as appellant.”
It is implicit in the majority opinion that Smith’s testimony was accepted as credible. The majority makes the following factual observations which show facts only found in Smith’s testimony:
Plaintiff lived in a housing project of approximately 500 units in which most of the residents had no telephones. Ms. Smith stated that she allowed some of the neighbors access to her phone. This testimony was neither challenged nor rebutted. Since the plaintiff’s apartment lock was not working, it was impossible to determine how many people came and went that day.
[[Image here]]
The record shows essentially that many people had access to Ms. Smith’s telephone and that no one knows with certainty whether a call was received at that number.
Because of this, I cannot agree that, as observed by the majority, “[t]his court sees the issue as more a burden of proof problem than one of credibility.” Without Smith’s testimony, the evidence presented by the appellee establishes a prima facie case and, if accepted (which it correctly was), meets the burden of proof (preponderance of the evidence). As previously indicated, at that point the burden of proof shifted to Smith. Acceptance of her credibility then became essential to establish facts to rebut the prima facie case. The majority has accepted Smith’s credibility and testimony as establishing sufficient facts to rebut the prima facie case, and, thus, Smith’s credibility has controlled whether or not the appellee has met its burden of proof.
SMITH’S CREDIBILITY
I believe an accurate determination of Smith’s credibility is essential to a just resolution of this case.
As previously indicated, Kelley’s testimony established a prima facie, circumstantial evidence case that Smith was a party to the communication with Kelley and, thus, Smith received Kelley’s order to go to *785 work. Where circumstantial evidence is relied upon, such evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. Lacey v. Louisiana Coca-Cola Bottling Company, Ltd., 452 So.2d 162 (La.1984). There are only two reasonable factual possibilities in this case: Smith either got the call or some other woman answered the phone and identified herself as Smith. If Smith got the call, the decisions of the Referee and the Commission are correct; if Smith did not get the call, these decisions are wrong.
Because Smith testified, a proper resolution of her credibility is a critical and controlling factual determination. Smith testified she did not receive the call. If she is found to be not credible, this factual possibility is no longer viable as a defense. In State v. Captville, 448 So.2d 676, 680 (La.1984), the Court observed as follows:
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. An evaluation of the reasonableness of other hypotheses of innocence provides a helpful methodology for determining the existence of a reasonable doubt.
In State v. Guirlando, 491 So.2d 38, 41-42 (La.App. 1st Cir.1986), appears the following:
The defendant testified and denied knowledge of the presence of the marijuana in his Bible located in his footlocker. The jury viewed the defendant's appearance and demeanor when he testified. Their verdict indicates they found the defendant’s testimony was not credible and, therefore, they gave it no weight and rejected it.... The jurors could have reasonably inferred that the failure of the defendant to tell the truth supported the inference that the truth was unfavorable to him and also showed an awareness of wrongdoing. Further, as indicated in Captville, when the jury rejects the defendant's hypothesis of innocence presented by his testimony, the defendant is guilty unless theré is another reasonable hypothesis which raises a reasonable doubt. It can reasonably be inferred from the fact of the presence of the marijuana in the defendant’s Bible located in the defendant’s footlocker and from the fact that he testified untruthfully that he had knowledge of the presence of the marijuana. Once it is factually established that the defendant was untruthful when he denied knowledge of the presence of the marijuana, the only remaining reasonable hypothesis is that he had knowledge of its presence. He either knew or he did not; there is no other hypothesis. The foregoing circumstances and the inferences reasonably drawn therefrom provide sufficient evidence to establish the elements of the offense beyond a reasonable doubt.
See also State v. Bates, 495 So.2d 1262, n. 3 (La.1986); State v. Johnson, 458 So.2d 937, 944 (La.App. 1st Cir.1984), writ denied, 463 So.2d 593 (La.1985). While it must be recognized that the above methodology for analyzing circumstantial evidence is found in criminal cases, it would seem that such methodology would also be applicable in civil cases where the burden of proof is less stringent and the consequences to the adverse party less severe.
If Smith’s credibility is rejected, then under the Captville methodology, her defense of not receiving the call must fall. In this posture, the evidence is sufficient to show Smith got the call because that is the only other factual hypothesis available. Conversely, if Smith is found credible, then there is another reasonable factual hypothesis to explain the incident and the appel-lee’s circumstantial evidence is not sufficient to constitute a preponderance of the evidence.
The Referee observed and heard Smith testify and found her “testimony lacking credibility.” However, this factual determination was interdicted because the Referee used an inapplicable inference to reach this finding. In this situation, this court has constitutional authority to make an independent review of the record and determine the facts, including Smith’s credibility, by a preponderance of the evidence. *786 La. Const. of 1974, art. V, § 10(B). And, generally, it is presumed that witnesses have told the truth. La.R.S. 15:432; Mouille v. Schutten, 190 La. 841, 188 So. 191 (1938); Fridge v. Talbert, 180 La. 937, 158 So. 209 (1934). CONTRA: Northern Insurance Company of New York v. Davis, 134 So.2d 317 (La.App. 4th Cir.1961). However, when making a factual determination on review, this court, like a trial court, may accept or reject, in whole or in part, the testimony of any witness. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985).
After reviewing the record, I conclude that seeing and hearing Smith testify is essential to determine her credibility. To me, the cold record is inconclusive on this crucial issue. This court cannot conduct an evidentiary hearing, and, thus, the only viable alternative is a remand to another Referee for a retrial of the case and a decision utilizing the rules and methodology set forth herein. La.C.C.P. art. 2164.
I agree that ordinarily a remand for a retrial on the facts is not in the interest of judicial economy. However, in my opinion, it is the only fair and just thing to do under the particular facts and circumstances of this case.
Accordingly, I respectfully dissent.

. Compare this holding with the majority holding on this point in Borne v. Brown, 492 So.2d 6 (La.App. 1st Cir.1986).